1

2 IN THE UNITED STATES DISTRICT COURT

3 FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7 KURT BERGMAN, et al.,                    Case No.: C-13-00741 JCS

8 Plaintiffs,                    **ORDER GRANTING BANK OF AMERICA, N.A. AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S MOTION TO DISMISS; GRANTING TRUSTEE CORPS' MOTION TO DISMISS; GRANTING PK PROPERTIES, LLC'S MOTION TO DISMISS; GRANTING PK PROPERTIES, LLC'S MOTION TO EXPUNGE *LIS PENDENS*; DISMISSING COMPLAINT WITH LEAVE TO AMEND**

9 v.

10 BANK OF AMERICA, N.A., et al.,

11

12 Defendants.

13

14

15 **I.     INTRODUCTION**

16       Plaintiffs Kurt and Nancy Bergman ("Plaintiffs") brought suit for wrongful foreclosure and

17 related claims against Defendants Bank of America, N.A. ("Bank of America"), Federal Home Loan

18 Mortgage Corporation ("Freddie Mac"), Trustee Corps, and PK Properties, LLC ("PK Properties")

19 (collectively, "Defendants").[1] Presently before the Court are three motions to dismiss submitted by (1)

20 Bank of America and Freddie Mac; (2) Trustee Corps; and (3) PK Properties (collectively, "Motions

21 to Dismiss"). Also before the Court is PK Properties' Motion to Expunge *Lis Pendens* ("Motion to

22 Expunge," together with Motions to Dismiss, "Motions"). All parties have consented to the

23 jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). A hearing on the

24 Motions was held on October 11, 2013 at 1:30 p.m. For the reasons set out below, the Motions are

25 GRANTED. The Complaint is DISMISSED with leave to amend as described below.[2]

26 _____

[1] In its motion, Trustee Corps refers to itself as "MTC Financial Inc. dba Trustee Corps."

27 [2] The Court indicated during the hearing that it would dismiss the federal claims with prejudice and decline to exercise

28 supplemental jurisdiction over the state law claims. However, upon reflection, the Court has decided to retain jurisdiction over this action for the moment because Freddie Mac is a party. *See* 12 U.S.C. § 1452(f)(2) ("all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Factual Background

On December 5, 2008, Plaintiffs entered into a Deed of Trust ("DOT") with Bank of America and PRLAP, Inc. ("PRLAP") in connection with the refinance of a single-family home located at 1622 Franrose Lane in Concord, California ("Property").[3] Compl. ¶ 11, Ex. A, Ex. B at 3. One week later, Plaintiffs recorded the DOT in Contra Costa County against the Property to secure a loan in the amount of $291,000. *Id.* ¶¶ 3, 11, Ex. A. The DOT identified Bank of America as the beneficiary and PRLAP as the trustee. *Id.* Ex. A ¶¶ C, D. Pursuant to the DOT and in accordance with California's nonjudicial foreclosure process, the trustee has certain duties: (1) if the borrower defaults and the lender invokes the power of sale, the trustee must take steps to foreclose upon the Property; and (2) if the borrower makes full payment of the secured debt, the trustee must convey the property to the borrower. *Id.* Ex. A ¶ 20.

Plaintiffs allege that, shortly after recording the DOT, Bank of America sold its beneficial interest in the DOT to a securitized trust, a Freddie Mac Real Estate Mortgage Investment Conduit ("Securitized Trust"). *Id.* ¶ 12, Ex. B at 5–6, 11, 13, 14, 15, 18. Plaintiffs further allege that this sale was imperfect because the DOT was never formally assigned from Bank of America to the

States shall have original jurisdiction of all such actions, without regard to amount or value"). In the event that Plaintiffs' claims against Freddie Mac are dismissed with prejudice, the remainder of the action will be dismissed for lack of subject matter jurisdiction because no other bases for jurisdiction remain. First, the federal claims—Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*—are dismissed with prejudice. *See* Parts IV.F. & IV.I., *infra*. Second, diversity is lacking because both Plaintiffs and Trustee Corps are citizens of California. *See* 28 U.S.C. § 1332.

Plaintiffs are residents of California. *See* Civil Cover Sheet, Dkt. No. 1-1 (listing Plaintiffs' "County of Residence" as Santa Clara, California). "A party's residence is 'prima facie' evidence of domicile." *Zavala v. Deutsche Bank Trust Co. Americas*, C 13-1040 LB, 2013 WL 3474760 (N.D. Cal. July 10, 2013) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). In the absence of evidence to the contrary, a party will be treated as a citizen of its state of residence for federal diversity purposes. *See id.*

Defendant Trustee Corps is a corporation incorporated in California. *See* Cal. Sec'y of State Website, Business Entity Detail for MTC Financial Inc., http://kepler.sos.ca.gov/ (listing address as same as that listed in Summons, Dkt. No. 3). For federal diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1181–82 (9th Cir. 2004) (citing 28 U.S.C. § 1332(c)(1)) (quotation marks omitted). *See also Zavala*, 2013 WL 3474760, at *3 (taking judicial notice of documents showing that Trustee Corps' main office and principal place of business are in California); *Durack v. MTC Fin., Inc.*, 2:11-CV-01894-KJD, 2012 WL 2047731 (D. Nev. June 5, 2012) (in evaluating diversity, finding that Trustee Corps is citizen of California).

Accordingly, both Plaintiffs and Trustee Corps are citizens of California, and complete diversity is lacking.

[3] The address is incorrectly listed as "1621 Franrose Lane" in the DOT. Compl. Ex. B at 17.

2

United States District Court
Northern District of California

1  Securitized Trust as it should have been, pursuant to the Securitized Trust's Pooling and Servicing

2  Agreement ("PSA").[4] *Id.* ¶ 25. Defendants neither confirm nor deny these allegations regarding the

3  sale of the DOT.

4       On July 28, 2011, Trustee Corps recorded a Notice of Default and Election to Sell Under Deed

5  of Trust ("NOD"). *Id.* ¶ 13; Defs. Bank of America and Freddie Mac's Req. for Judicial Notice in

6  Supp. of Mot. to Dismiss ("BOA RJN"), Ex. B.[5] The NOD is signed by Susan Dana, "Authorized

7  Signatory" of Pacific Coast Title Company, as agent for Trustee Corps, which in turn was acting "as

8  Agent for the Beneficiary." BOA RJN Ex. B. The NOD identifies Bank of America as the "original

9  Beneficiary." *Id.*

10      On October 17, 2011, Trustee Corps recorded a Substitution of Trustee ("SOT"), dated August

11  10, 2011. The SOT replaced the original trustee of the DOT—PRLAP—with Trustee Corps. Compl.

12  ¶ 14; BOA RJN Ex. C. The SOT is signed by Rande Johnsen, Director of Trustee Corps, acting "as

13  Attorney in Fact for Bank of America, N.A., Successor By Merger To BAC Home Loans Servicing,

14  LP."[6] BOA RJN Ex. C.

15      On November 2, 2011, Trustee Corps recorded a Notice of Trustee's Sale ("NOTS"). Compl.

16  ¶ 15; BOA RJN Ex. D. On December 5, 2011, Trustee Corps conducted a trustee's sale of the

17  Property. *Id.* ¶ 17; BOA RJN Ex. E at 2. Attending the sale was Kenneth LaBombard, an employee of

18  Heisner & Associates, Inc. ("Heisner & Associates"). Def. PK Properties' Mot. to Expunge ("Mot. to

19  Expunge"), Decl. of Kenneth LaBombard ¶ 4 ("LaBombard Decl."). According to PK Properties,

20  Heisner & Associates had been hired by PK Properties to purchase foreclosure properties on an

21  ongoing basis; after Heisner & Associates purchased a property and resold it, the two entities would

22  share the profits. Mot. to Expunge, Decl. of Pennie Weber ¶ 6 ("Weber Decl."). At this particular

23  trustee's sale, Mr. LaBombard purchased the Property for the asking price of $177,598.81.

24  LaBombard Decl. ¶ 4. The receipt for the sale indicates that title was to be vested in PK Properties. *Id.*

---

25  [4] The Court has not received a copy of the PSA.

26  [5] *See also* Def. Trustee Corps' Req. for Judicial Notice in Supp. of Mot. to Dismiss. Because both requests seek judicial notice of identical documents, albeit in a different order, the Court cites only to the BOA RJN in the text.

27  [6] The reference to BAC Home Loans Servicing, LP appears to be incorrect because Bank of America was the original lender. Nothing in the pleadings suggests that BAC Home Loans Servicing, LP was involved in any of the transactions at

28  issue in this case. *See also* Compl. Ex. B at 14 (Plaintiffs' report asserting that "BAC Home Loans Servicing has no rights or authority under the Note and Deed of Trust to substitute the Trustee.")

Ex. 1. About three weeks later, Trustee Corps recorded a Trustee's Deed Upon Sale ("Trustee's

Deed") identifying PK Properties as the owner of the Property. *Id.*; BOA RJN Ex. E.

Plaintiffs allege that after the NOTS was recorded but before the trustee's sale, Plaintiffs

received a Home Affordable Modification Program ("HAMP") modification approval, which Bank of

America "ignored." Compl. ¶ 16, Ex. B at 13.

On March 14, 2012, Barry Heisner—the owner of Heisner & Associates and brother-in-law of

PK Properties' sole owner and member, Pennie Weber—pled guilty to (1) conspiracy to rig bids for

the purpose of obtaining properties offered at public real estate foreclosure auctions in Contra Costa

County in unreasonable restraint of interstate trade and commerce; and (2) conspiracy to commit mail

fraud. Compl. Ex. C ¶ 2 (citing 15 U.S.C. § 1; 18 U.S.C. § 1349). The plea agreement concerned Mr.

Heisner's activities "beginning as early as August 2008 and continuing until in or about January

2011." Compl. Ex. C ¶ 2.

**B.      Procedural Background**

Plaintiffs were or are involved in three state lawsuits pertaining to the Property. First, in

December 2011, Plaintiffs filed a complaint against Bank of America in the Contra Costa County

Superior Court, alleging wrongful foreclosure, slander of title, and violations of the California Unfair

Business Practices Act, California Business and Professions Code Section 17200 ("Unfair

Competition Law" or "UCL"). Defs. Bank of America and Freddie Mac's Supplemental Req. for

Judicial Notice in Supp. of Mot. to Dismiss ("BOA Supplemental RJN"), Ex. 2. In October 2012, the

state court issued a tentative ruling, which would have sustained Bank of America's demurrer without

leave to amend. *Id.* Ex. 3 at 3. But before this ruling was finalized, Plaintiffs voluntarily dismissed

their claims without prejudice. *Id.* Exs. 1, 4.

Second, in February 2012, PK Properties filed a complaint against Plaintiffs in the same state

court, alleging unlawful detainer. Mot. to Expunge, Decl. of Richard Hobin ¶ 3 ("Hobin Decl."). In

March 2012, the state court issued a judgment for possession against Plaintiffs. *Id.* Shortly thereafter,

PK Properties and Plaintiffs entered into a stipulated judgment for unlawful detainer ("Stipulated

Judgment") wherein Plaintiffs agreed to pay rent in the amount of $1,250 per month until the

conclusion of the first state case against Bank of America, discussed above. *Id.* Ex. 1. In accordance

United States District Court
Northern District of California

with the Stipulated Judgment, Plaintiffs made payments until November 2012. *See* Hobin Decl. ¶ 3. However, at some point, Plaintiffs filed a motion to set aside or rescind the Stipulated Judgment. *See id.* ¶ 4. The motion was denied in March 2013. *Id.* Ex. 2. The state court simultaneously ordered Plaintiffs to pay back rent from November 2012 to March 2013, and to remove all notices of *lis pendens* pertaining to the Property. *Id.* At that time, Plaintiffs had filed at least one notice of *lis pendens* in February 2013 in relation to the instant federal suit. *Id.*; Dkt. No. 4 (Notice of Lis Pendens). In April 2013, Plaintiffs were evicted from their home. Hobin Decl. ¶ 4.

Third, in December 2012, Plaintiffs filed a complaint in the same state court again, alleging slander of title, wrongful foreclosure, and fraud in the inducement against PK Properties, Mr. Heisner, and his wife Belinda Heisner. *Id.* Ex. 3. Mrs. Heisner is Pennie Weber's sister and the agent for service of process for PK Properties. Weber Decl. ¶ 4. The complaint alleged that Mr. and Mrs. Heisner "conspired . . . to commit the acts which resulted in Defendant PK Properties . . . being the purported winning bidder at the foreclosure sale of the . . . Property." Hobin Decl. Ex. 3 ¶ 4. The complaint was dismissed with leave to amend in August 2013. *See* Hobin Decl. ¶ 5; *id.* Ex. 5.

In February 2013, Plaintiffs brought the instant case, alleging ten causes of action: (1) breach of express agreements; (2) breach of implied agreements; (3) slander of title; (4) wrongful foreclosure; (5) violation of section 2923.5 of the California Civil Code; (6) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; (7) quiet title; (8) fraud in the concealment; (9) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 *et seq.*; and (10) violation of the UCL. Presently before the Court are all Defendants' Motions to Dismiss and PK Properties' Motion to Expunge.

### C.     The Complaint

Most of Plaintiffs' claims are premised on one of two legal theories. First, Plaintiffs base their arguments on the alleged sale of the DOT from Bank of America to the Securitized Trust. Plaintiffs argue that the alleged sale divested Bank of America of its beneficial interest in the DOT, and that because the DOT was never properly assigned, the Securitized Trust also does not hold the beneficial interest. They allege that, accordingly, the true beneficiaries are the Securitized Trust's certificate holders. Compl. at ¶¶ 12, 23, 25, 39. Second, Plaintiffs base their argument on the alleged

United States District Court
Northern District of California

1   involvement of PK Properties in illegal bid-rigging activities, including activities that allegedly

2   tainted the trustee's sale for the Property.

3        (1)    <u>Breach of Express Agreements</u>.[7] Plaintiffs allege that Bank of America, Freddie Mac,

4   and Trustee Corps breached the DOT and PSA. *Id.* ¶ 18. First, Plaintiffs allege that Defendants

5   breached the DOT's power of sale provisions when the NOD was executed because: (1) Bank of

6   America had previously sold the DOT to the Securitized Trust without a proper assignment, rendering

7   none of the Defendants with the authority to issue the NOD, and (2) the NOD was executed by a

8   "robo-signer" with no actual knowledge of the NOD's content. *Id.* ¶¶ 20–23. Second, Plaintiffs allege

9   that Defendants breached the PSA by failing to complete the assignment of the beneficial interest in

10  the DOT to the Securitized Trust within the time frame required by the PSA. *Id.* ¶¶ 24–25. Plaintiffs

11  allege that they sustained pecuniary damages because the sale of the DOT to the Securitized Trust

12  negatively affected the purchase price and vendibility of the Property. *Id.* ¶ 26. Plaintiffs do not allege

13  that they are parties to the PSA. Plaintiffs seek attorneys' fees and costs associated with bringing an

14  action to cancel the recorded documents. *Id.* ¶ 27.

15       (2)    <u>Breach of Implied Agreements</u>.[8] Plaintiffs allege that Bank of America and Freddie

16  Mac breached implied agreements with Plaintiffs. Without identifying any specific implied

17  agreements, Plaintiffs allege that their "contractual relationship" with Bank of America and Freddie

18  Mac entitles them to void the DOT's power of sale clause and to be indemnified for losses caused by

19  enforcement of that clause. *Id.* ¶ 31. Plaintiffs allege that Bank of America "as Servicer," and Freddie

20  Mac "as trustee for the [S]ecuritized [T]rust," are in breach of this "indemnification obligation"

21  because they "demand[] payments not credited to Plaintiffs' account" and "fail[] to defend, indemnify

22  or hold harmless Plaintiffs for the claims made by the [S]ecuritized [T]rust." *Id.* ¶ 32. Plaintiffs

23  further allege that Bank of America and Freddie Mac "claimed the beneficial interest in the [DOT]

24  without having any legally enforceable claim to such due to the failure to record an assignment in

---

25  [7] Although the heading for the breach of express agreements claim indicates that it is brought against "Defendants," the

26  Complaint does not specifically allege the involvement of PK Properties. To the extent that this claim is intended to be
    asserted against PK Properties, it is dismissed for failure to allege applicable wrongful conduct.

27  [8] Although the heading for breach of implied agreements claim indicates that it is brought against "All Defendants," the
    Complaint does not specifically allege the involvement of Trustee Corps or PK Properties. To the extent that this claim is

28  intended to be asserted against Trustee Corps or PK Properties, it is dismissed for failure to allege applicable wrongful
    conduct.

United States District Court
Northern District of California

violation of the PSA . . . ." *Id.* ¶ 33. Plaintiffs seek attorneys' fees and costs associated with bringing an action to cancel the recorded documents. *Id.* ¶¶ 35–37.

      (3)   <u>Slander of Title</u>.[9] Plaintiffs allege that Bank of America, Freddie Mac, and Trustee Corps slandered Plaintiffs' title to the Property. Specifically, Plaintiffs allege that because Bank of America had previously sold the DOT, Bank of America did not have authority to execute the SOT, which replaced PRLAP with Trustee Corps. *Id.* ¶ 39. Accordingly, Plaintiffs allege that Trustee Corps did not have authority to exercise any trustee duties under the DOT, such as recording the NOTS or the Trustee's Deed. *Id.* ¶¶ 40, 41. Plaintiffs allege that Defendants' recordings of the SOT, NOTS, and Trustee's Deed were malicious and without privilege. *Id.* ¶ 41. Plaintiffs seek attorneys' fees and costs associated with bringing an action to cancel the recorded documents. *Id.* ¶ 42.

      (4)   <u>Wrongful Foreclosure</u>.[10] Plaintiffs allege that Bank of America's foreclosure of the Property was illegal because Bank of America was not the true beneficiary of the DOT. *Id.* ¶ 46. Plaintiffs allege that the subsequent trustee's sale of the Property was thus illegal and oppressive because Trustee Corps was not properly appointed as the trustee. *Id.* ¶ 47. Plaintiffs further allege that they were prejudiced because they were put in jeopardy of losing their home, and because they in fact lost their home, lost their equity in the Property, and were forced to engage counsel. *Id.* ¶ 48. Plaintiffs argue that they are excused from complying with the tender rule—a rule that generally requires tender of the full amount of the debt in wrongful foreclosure actions—because requiring tender would be inequitable. *Id.* ¶ 49.

      (5)   <u>California Civil Code § 2923.5</u>.[11] Plaintiffs allege that Defendants violated section 2923.5 of the California Civil Code by failing to contact Plaintiffs, in person or by telephone, at least thirty days prior to recording the NOD, and by failing to include a statement in the NOD that someone tried with due diligence to contact the borrower. *Id.* ¶ 51. Plaintiffs further allege that "[t]he statement

---

[9] Although the heading for the slander of title claim indicates that it is brought against "All Defendants," the Complaint does not specifically allege the involvement of Freddie Mac or PK Properties. To the extent that this claim is intended to be asserted against Freddie Mac or PK Properties, it is dismissed for failure to allege applicable wrongful conduct.

[10] Although the heading for the wrongful foreclosure claim indicates that it is brought against "All Defendants," the Complaint does not specifically allege the involvement of Freddie Mac or PK Properties. To the extent that this claim is intended to be asserted against Freddie Mac or PK Properties, it is dismissed for failure to allege applicable wrongful conduct.

[11] Although the heading for the section 2923.5 claim indicates that it is brought against "Defendants," the Complaint does not specifically name which Defendants carried out the actions or omissions giving rise to this cause of action.

in the NOD that Defendants were not required to comply with Section 2923.5 is false because Plaintiffs did not in fact surrender the property . . . ."[12] *Id.* ¶ 52. Plaintiffs allege that, as a result of these deficiencies, the NOD and all proceedings flowing from it are void. *Id.* ¶ 53.

(6) <u>Truth in Lending Act</u>.[13] Plaintiffs allege that Defendants violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") by failing to provide accurate material disclosures and by failing to take into account the intent of the legislature in approving this statute, which was to provide borrowers with easily understandable loan products and terms. *Id.* ¶ 55. Plaintiffs allege that any applicable statutes of limitations were tolled by Defendants' failure to effectively provide the required disclosures and notices, such as disclosures regarding payment schedules. *Id.* ¶ 56. Plaintiffs seek rescission of the loan, actual and punitive damages, and equitable restitution and disgorgement of profits. *Id.* ¶¶ 57–60.

(7) <u>Quiet Title</u>.[14] Plaintiffs allege that each Defendant claims an interest in the Property, and they seek a declaration quieting title in Plaintiffs' favor. *Id.* ¶¶ 63–64. Specifically, Plaintiffs allege that PK Properties' purchase of the Property was fraudulent and therefore void. *Id.* ¶¶ 65–66. Plaintiffs base their claim of fraud on the plea agreement wherein Mr. Heisner pled guilty to bid-rigging and conspiracy in connection with the purchase of foreclosed properties. *Id.* ¶ 65; Ex. C.

(8) <u>Fraud in the Concealment</u>.[15] Plaintiffs allege that Defendants concealed PK Properties' involvement in Mr. Heisner's bid-rigging scheme, which fraudulently induced Plaintiffs to make payments to PK Properties for forbearance of unlawful detainer. *Id.* ¶¶ 68–69. Plaintiffs further allege that Defendants intended to induce them to obtain economic advantage and that Plaintiffs reasonably relied upon Defendants' misrepresentations to their detriment. *Id.* ¶¶ 70–71. Additionally, Plaintiffs allege that Defendants' failure to disclose PK's criminal activity wrongfully induced them to "enter

---

[12] The Court has not been able to locate this statement in the NOD.

[13] Although the heading for the TILA claim indicates that it is brought against "Defendants," the Complaint does not specifically name which Defendants carried out the actions or omissions giving rise to this cause of action.

[14] Although the heading for the quiet title claim indicates that it is brought against only PK Properties and Does 1–100, the Plaintiffs allege in the text of the Complaint that "Defendants, and each of them" are liable for this cause of action.

[15] Although the heading for the fraud in the concealment claim indicates that it is brought against only PK Properties and Does 1–100, the Plaintiffs allege in the text of the Complaint that "Defendants" are liable for this cause of action, and Plaintiffs seek relief against "Defendants and each of them." While Plaintiffs do not provide details of the underlying agreement to make payments, this apparently refers to the unlawful detainer case in state court, which resulted in the Stipulated Judgment. *See* Part II.B., *supra*.

into the loans and accept the Services as alleged herein." *Id.* ¶ 72.

(9)    Racketeer Influenced and Corrupt Organizations Act.[16] Plaintiffs allege that Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") by concealing the securitization of Plaintiffs' loans, *i.e.*, Bank of America's sale of the DOT to the Securitized Trust, and by concealing information regarding PK Properties' connection with the bid-rigging scheme. *Id.* ¶¶ 76, 77, 85. Plaintiffs allege that these acts amount to crimes of "malice, fraud and/or oppression," and that they were preceded by "predicate acts" that indicate a pattern of criminal activity under RICO. *Id.* ¶ 78. Specifically, Plaintiffs allege that Defendants engaged in the predicate acts of "[b]ringing suit on behalf of entities that were not the real parties in interest," "concealing the parties' lack of standing," "drafting of fraudulent affidavits and documents," executing these documents by robo-signers, and committing mail fraud. *Id.* ¶¶ 78, 79.

Plaintiffs allege that Defendants have acted as part of "a scheme to defraud everyone, including the Plaintiffs," that such acts affected interstate commerce by contributing to the foreclosure crisis, and that Defendants profited from such acts. *Id.* ¶¶ 79, 80, 84. Finally, Plaintiffs allege that Defendants are engaged in a broad scheme to obfuscate the foreclosure process and gain control of the American economy. *Id.* ¶¶ 97–104. Plaintiffs seek attorneys' fees and costs associated with bringing an action to cancel the recorded documents. *Id.* ¶ 107. Plaintiffs also seek an injunction, although it is not clear what they seek to enjoin. *Id.* ¶ 105.

(10)    California's Unfair Competition Law.[17] Plaintiffs allege that Defendants violated the UCL by recording the NOD, SOT, NOTS, and Trustee's Deed. *Id.* ¶ 110. Plaintiffs allege that these recordings constituted unlawful and unfair business practices. *Id.* Plaintiffs further allege that they suffered injury-in-fact because their interest in the Property was placed in jeopardy and they incurred unspecified monetary damages. *Id.* ¶ 111.

**D.    Motions to Dismiss**

**1.    Defendants' Motions**

---

[16] Although the heading for the RICO claim indicates that it is brought against only PK Properties and Does 1–100, Plaintiffs allege in the text of the Complaint that "Defendants" are liable for this cause of action, and Plaintiffs seek relief against "Defendants and each of them."

[17] Although the heading for the UCL claim indicates that it is brought against "All Defendants," the Complaint does not specifically name which Defendants carried out the actions or omissions giving rise to this cause of action.

United States District Court
Northern District of California

a.      **Defendants' general arguments**

Bank of America and Freddie Mac argue that the Complaint must be dismissed in its entirety because Plaintiffs have not alleged that they are prepared to tender all amounts due under their loan. Defs. Bank of America and Freddie Mac's Mot. to Dismiss at 3–4 ("BOA Mot.") (citing *Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 19, 2009); *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 580 (1984)).

Trustee Corps argues that several of Plaintiffs' claims are barred for four reasons: (1) Trustee Corps' conduct was subject to either absolute privilege or qualified common interest privilege and Plaintiffs did not adequately plead malice; (2) claims against Trustee Corps related to loan origination, loan servicing, loan modification, forbearance, and HAMP, among others, are barred because the trustee's duties are exclusively defined by the DOT and governing statutes; (3) Trustee Corps was acting as an agent for a disclosed principal, Bank of America, such that Plaintiffs' contract and conspiracy claims against Trustee Corps are barred by the agent's immunity rule; and (4) Plaintiffs cannot challenge the foreclosure sale because they failed to make a valid and unambiguous offer of tender. Def. Trustee Corps' Mot. to Dismiss at 3–7 ("Trustee Mot.") (citing *Pro Value Props., Inc. v. Quality Loan Serv. Corp.*, 170 Cal. App. 4th 579, 583 (2009); *Black v. Bank of America*, 30 Cal. App. 4th 1, 4–5 (1994); *Jacobson v. Balboa Arms Drive Trust #5402 HSBC Financial Trustee*, No. 10-CV-2195-JM (RBB), 2011 WL 2784126, at *10 (S.D. Cal. Apr. 4, 2011)).

PK Properties argues that most of the Complaint's causes of action relate to the original loan or the foreclosure and, as such, they are not applicable to PK Properties, which only became involved when it purchased the Property at the trustee's sale. Def. PK Properties' Mot. to Dismiss at 2–3 ("PK Mot."). Further, PK Properties argues that all of the allegations against it are based solely upon Mr. Heisner's plea agreement, which they argue is irrelevant because it covers a period of time ending in January 2011, nearly a year before the trustee's sale in December 2011. *Id.* at 3, 6.

b.      **Defendants' specific arguments as to each claim**

(1), (2) <u>Breach of Express and Implied Agreements</u>. Bank of America and Freddie Mac argue that the first claim fails because Defendants properly issued the NOD in compliance with the DOT and subsection 2924(a)(1) of the California Civil Code, which requires that the foreclosure process be

United States District Court
Northern District of California

1   initiated by the "trustee, mortgagee, or beneficiary, or any of their authorized agents." BOA Mot. at

2   4–6 (citing Cal. Civ. Code § 2924(a)(1)). They contend that allowing a judicial action to determine

3   whether the person initiating the foreclosure process is indeed authorized to do so will undermine

4   California's nonjudicial foreclosure scheme. *Id*. at 6 (citing *Gomes v. Countrywide Home Loans, Inc.*,

5   192 Cal. App. 4th 1149, 1155 (2011)). Moreover, they assert that each foreclosure document was

6   properly executed. *Id*. As to securitization of the beneficial interest, they argue that Plaintiffs were not

7   entitled to be made aware of an assignment of that interest and that Plaintiffs lack authority to enforce

8   the PSA. *Id*. at 6–8 (citing BOA RJN Ex. A ¶ 20; *Benham v. Aurora Loan Servs.*, No. C-09-2059 SC,

9   2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009)). In addition, they assert that the beneficial interest

10  may have been securitized by other means even if the assignment was improper. *Id*. at 7 (citing

11  *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 272 (2011)). Bank of America and

12  Freddie Mac argue that the second claim fails for the same reasons. *Id*. at 8–9.

13       Trustee Corps argues that these claims fail because there is no contractual relationship

14  between it and Plaintiffs, and because the claims are barred by the agent's immunity rule. Trustee

15  Mot. at 8.

16       PK Properties argues that these claims fail because it is not a party to the DOT or the PSA. PK

17  Mot. at 5.

18       (3)   <u>Slander of Title</u>. Bank of America and Freddie Mac assert that the slander of title claim

19  fails because Plaintiffs cannot allege any false publication. BOA Mot. at 10. In any event, they argue

20  that an assignment without authority did not cause Plaintiffs to suffer pecuniary damage, because the

21  true victim would be the original lender. *Id*. (citing *Fontenot*, 198 Cal. App. 4th at 272). Moreover,

22  they contend that the claim fails because Plaintiffs have not alleged any facts suggesting that the

23  qualified common interest privilege would not apply here. *Id*. (citing *Kachlon v. Markowitz*, 168 Cal.

24  App. 4th 316, 333–34 (2008); Cal. Civ. Code § 47.

25       Trustee Corps again asserts that the publications that are the subject of this cause of action are

26  privileged. Trustee Mot. at 8–9. It also contends that Plaintiffs have not properly alleged any

27  deficiency in the NOD or any other document. *Id*. at 9. Finally, it argues that Plaintiffs do not allege

28  facts sufficient to challenge Bank of America's standing to foreclose. *Id*. (citing *Gomes*, 192 Cal.

App. 4th at 1152).

PK Properties argues that Plaintiffs have failed to allege any facts that show the involvement of PK Properties in recording the SOT, NOTS, or Trustee's Deed. PK Mot. at 5.

(4)    <u>Wrongful Foreclosure</u>. Bank of America and Freddie Mac argue that the foreclosure documents demonstrate that the foreclosure was carried out properly. BOA Mot. at 11. Further, they contend that there is no requirement of a beneficial interest in the note to foreclose. *Id*. (citing *Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010)).

Trustee Corps argues that Plaintiffs have not identified a valid basis for challenging the foreclosure sale. Trustee Mot. at 9–11. It contends that there is no basis for a suit to challenge Bank of America's standing to initiate foreclosure either as the beneficiary of the DOT or an entity authorized to act on behalf of the beneficiary. *Id*. at 10–11 (citing *Gomes*, 192 Cal. App. 4th at 1156; *Robinson v. Countrywide Home Loans, Inc.*, 199 Cal. App. 4th 42, 46 (2011)).

PK Properties argues that this claim fails because it concerns the loan and the foreclosure, in which PK Properties played no role. PK Mot. at 5.

(5)    <u>California Civil Code § 2923.5</u>. Bank of America and Wells Fargo argue that there is no remedy available to Plaintiffs under section 2923.5 because the statute provides only a postponement of the sale before it happens; here, the sale has already occurred. BOA Mot. at 11–12 (citing *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 235 (2010)).

Trustee Corps asserts that this cause of action fails because the statute applies only to deeds of trust recorded from January 1, 2003 to December 31, 2007; here, the DOT was recorded after December 12, 2008. Trustee Mot. at 11 (citing Compl. ¶ 3; Cal. Civ. Code § 2923.5(i) (2011)).

PK Properties argues that this claim fails because it concerns the loan and the foreclosure, in which PK Properties played no role. PK Mot. at 5. Further, PK Properties argues that it was not a party to the DOT and therefore could not have violated section 2923.5. *Id*.

(6)    <u>TILA</u>. Bank of America and Freddie Mac argue that TILA's remedy of rescission does not apply to residential mortgage transactions. BOA Mot. at 12 (citing 15 U.S.C. § 1635(e)). In any event, they contend that rescission is not possible because the Property has already been sold at foreclosure. *Id*. at 14. Moreover, they assert that the TILA claim is time-barred. *Id*. at 12–14 (citing 15

U.S.C. §§ 1635(f), 1640(e); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410 (1998)). They contend that Plaintiffs have not pled facts to support a theory of equitable tolling or any other equitable exception to the limitations period. *Id.* at 13–14 (citing *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986); *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996)). Finally, they argue that a claim for rescission is barred by Plaintiffs' failure to allege tender. *Id.* at 14–15.

Trustee Corps argues that this claim fails because Plaintiffs have not, and cannot, allege that it is a creditor under TILA. Trustee Mot. at 11–12 (citing 15 U.S.C. § 1602(f); *Jacobson*, 2011 WL 2784126.

PK Properties argues that this claim fails because it relates to the origination of the loan, in which PK Properties played no role. PK Mot. at 6. Further, PK Properties argues that it was not a party to the DOT and therefore could not have violated TILA. *Id.*

(7)   Quiet Title. Bank of America, Freddie Mac, and Trustee Corps did not present arguments regarding this cause of action in their motions.

PK Properties argues that this claim is based entirely on Mr. Heisner's plea agreement, which covered a period ending in or around January 2011—nearly a year before the trustee's sale in December 2011—and which, on its face, did not concern other employees at Heisner & Associates, which PK Properties had hired to purchase foreclosure properties. *Id.* PK Properties further points out that Mr. Heisner's plea agreement does not mention PK Properties in it. *Id.* PK Properties argues that the claim is based on speculation and is not specific to the Property at issue. *Id.* at 7–8.

(8)   Fraud in the Concealment. Bank of America, Freddie Mac, and Trustee Corps did not present arguments regarding this cause of action in their motions.

PK Properties argues that this claim fails because Plaintiffs fail to plead sufficient facts with respect to its claim that PK Properties engaged in any criminal activities to rig bids generally or specifically with regard to the trustee's sale of the Property. *Id.* at 9. PK Properties also argues that there is no factual link between the plea agreement and the trustee's sale. *Id.*

(9)   RICO. Bank of America and Freddie Mac assert that Plaintiffs have failed to plead their RICO claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, the pleading standard for fraud. BOA Mot. at 15. In addition, they contend that Plaintiffs do not make

United States District Court
Northern District of California

13

United States District Court
Northern District of California

specific allegations regarding the alleged pattern of racketeering activity. *Id*. at 15–16 (citing *Blake v. Dierdorff*, 856 F.2d 1365, 1371 (9th Cir. 1988); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010)). Further, they argue that the claim is barred by the statute of limitations. *Id*. at 17.

Trustee Corps contends that Plaintiffs have failed to allege any specific facts as to how Trustee Corps acted in concert or in enterprise with Bank of America. Trustee Mot. at 12–13 (citing *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1112 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc)). Trustee Corps also argues that Plaintiffs have failed to allege a pattern of racketeering activity. *Id*. at 13.

PK Properties argues that this claim fails because Plaintiffs do not "state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." PK Mot. at 10 (citing *In re Countrywide Financial Corp. Mortgage Marketing and Sales Practice Litigation*, 601 F. Supp. 2d 1201, 1215 (S.D. Cal. Feb. 5, 2009) (quoting Fed. R. Civ. P. 9(b)).

(10)   UCL. Bank of America and Wells Fargo contend that the UCL claim fails because the foreclosure documents were valid and Plaintiffs lack standing to challenge the PSA. BOA Mot. at 17. Moreover, they argue that the UCL claim is barred by the tender rule. *Id*. at 18. Finally, they contend that the UCL claim is time-barred to the extent it relies on conduct at the time of loan origination. *Id*.

Trustee Corps asserts that the UCL claim fails because Plaintiffs have not pled a predicate violation of law, and that the claim is barred by privilege. Trustee Mot. at 14–15.

PK Properties argues that this claim fails because Plaintiffs have failed to make any specific factual allegations with respect to PK Properties. PK Mot. at 10.

## 2.   Plaintiffs' Oppositions to Motions to Dismiss

Plaintiffs file separate, but substantively identical, briefs in opposition to each of the Motions to Dismiss.[18] Plaintiffs begin by arguing that tender is not required where, as they assert is the case here, the foreclosure is void and requiring compliance with the tender rule would be inequitable. Pl.'s

---

[18] The only difference between Plaintiffs' Opposition to Bank of America and Freddie Mac's Motion to Dismiss ("Opposition to BOA") and the Opposition to Trustee Corps' Motion to Dismiss is the identification of the Defendants in the introduction and conclusion sections. The Opposition to PK Properties' Motion to Dismiss ("Opposition to PK") is also substantively identical, except that it does not include certain arguments. For brevity, the Court refers only to the Opposition to BOA. Where the Opposition to PK presents distinct arguments, the Court refers to that brief as well.

14

United States District Court
Northern District of California

Opp'n Br. to BOA Mot. to Dismiss ("Opp'n to BOA"), at 2–4 (citing *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 113 (2011); *Tamburri v. Suntrust Mortg., Inc.*, No. C–11–2899 EMC, 2011 WL 6294472, at *3 (N.D. Cal. Dec. 15, 2011); *Sacchi v. Mortg. Elec. Registration Sys., Inc.*, No. CV 11–1658 AHM (CWx), 2011 WL 2533029, at *9 (C.D. Cal. June 24, 2011)). Plaintiffs repeat their arguments that the NOD is invalid because it was signed by Susan Dana, who is in fact an employee of Bank of America, on behalf of Trustee Corps, which was not the true trustee under the DOT. *Id*. at 4. Next, Plaintiffs argue that the securitization of the beneficial interest in the DOT left Bank of America with only the servicing right to collect monthly payments. *Id*. at 4–5. Having addressed these preliminary issues, Plaintiffs address each of the causes of action in turn:

(1), (2) <u>Breach of Contract and Implied Agreement</u>. Plaintiffs restate the Complaint's theories for breach of the DOT (*i.e.*, recordation of the NOD, SOT, NOTS, and Trustee's Deed by parties other than true beneficiary or trustee of the DOT violated the DOT) and breach of the PSA (*i.e.*, Bank of America's alleged sale of the DOT to the Securitized Trust without proper assignment of the DOT violated the PSA). *Id*. at 5–6.

(3)     <u>Slander of Title</u>. Plaintiffs restate the Complaint's theories that the SOT, NOTS, and Trustee's Deed were recorded wrongfully and without privilege, and that they were prejudiced by these publications. *Id*. at 6–10. Plaintiffs further contend that the NOD is also false and invalid because of Defendants' failure to comply with section 2923.5 of the California Civil Code. Plaintiffs also argue that attorneys' fees and costs necessary to clear title or remove doubt about vendibility placed on a property by a defendant's falsehoods are sufficient to constitute pecuniary or special damages for the purposes of a slander of title action. *Id*. at 9–10 (citing *Sumner Hill Homeowners' Ass'n Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999 (2012)).

Additionally, Plaintiffs argue that this cause of action applies to PK Properties because it maliciously concealed bid-rigging activities and, but for this concealment, the DOT's beneficiary "would have had a fair opportunity to recoup losses for which otherwise Plaintiffs were liable and/or the Property would not have been sold." Pl.'s Opp'n Br. to PK Mot. to Dismiss ("Opp'n to PK"), at 4. Additionally, Plaintiffs assert that they have properly alleged (or that they could be granted leave to allege) that Mr. Heisner's bid-rigging activities were undertaken "with respect to the purchase of

United States District Court
Northern District of California

1   Plaintiff's DOT" and the trustee's sale. *Id.* at 4–5. Plaintiffs argue that leave to amend should be

2   granted liberally. *Id.* at 5–6.

3           (4)     <u>Wrongful Foreclosure</u>. Plaintiffs restate the Complaint's theories that the foreclosure of

4   the Property was illegal because Bank of America was not the true beneficiary of the DOT, nor was

5   Trustee Corps the properly appointed trustee, and that these entities must be true in order for the

6   foreclosure to be valid. Opp'n to BOA at 11–12. Plaintiffs further contend that such actions violated

7   section 2934a of the California Civil Code. *Id.*

8           (5)     <u>California Civil Code § 2923.5</u>. Plaintiffs restate the Complaint's theories that

9   Defendants violated section 2923.5 as to the NOD and, therefore, all proceedings flowing from it are

10  void. *Id.* at 13 (citing *Mabry*, 185 Cal. App. 4th at 236–37). Plaintiffs further argue that the NOD did

11  not contain a statement of compliance pursuant to section 2923.5 and was thus unlawful. *Id.* at 13.

12          (6)     <u>TILA</u>. Plaintiffs restate the Complaint's theories that Defendants violated TILA, and

13  that the statute of limitations was tolled. *Id.* at 14. Plaintiffs further contend that TILA applies to

14  Defendants by virtue of their involvement in the capacities of "sponsor and seller of Plaintiffs' note

15  and deed of trust, depositor, and issuing entity for the certificate holders, and custodian," as well as

16  "original creditor, assignee of the original creditor, or agent of the original creditor." *Id.* Additionally,

17  Plaintiffs argue that their counsel, on their behalf, are whistleblowers to the alleged scheme to avoid

18  taxes "under the authority and at the request of the Internal Revenue Service." *Id.* at 15 (citing 26

19  U.S.C. § 7801).

20          (7)     <u>Quiet Title</u>. Plaintiffs contend that the foreclosure activities of Bank of America,

21  Freddie Mac, and Trustee Corps were not authorized by the actual beneficiaries of the DOT, as

22  required by California Civil Code § 2923(a), and therefore were fraudulent. *Id.* at 16. Plaintiffs argue

23  that, accordingly, the NOD is statutorily defective and thus invalid as a matter of law. *Id.* (citing *Trout*

24  *v. Taylor*, 220 Cal. 652, 653 (1934)[19]; *6 Angels Inc. v. Stuart Wright Mortgage, Inc.*, 85 Cal. App. 4th

25  1279, 1286 (2001)[20]; *Mitra v. Cote*, 127 Cal. App. 3d 888, 894 (1982).

26          (8)     <u>Fraud in the Concealment</u>. Plaintiffs contend for the first time that Defendants

27

28

[19] Plaintiffs incorrectly cite "*Trout v. Trout*, 2220 Cal. 652, 656 (1934)," which does not correspond to any case. The citation that Plaintiffs presumably intend to cite is included in the text.

[20] Plaintiffs incorrectly omit the "6" that precedes the party name.

United States District Court
Northern District of California

1    intentionally induced Plaintiffs "to part with their personal and real property buy [sic] using a stated

2    income loan." Opp'n to BOA, at 17. Plaintiffs allege that the credit application or the W-2 forms

3    provided by Plaintiffs were sufficient to allow Defendants "to know what type of loan should be

4    offered, and what the Plaintiffs could not afford." *Id.* Plaintiffs assert that any falsification of a credit

5    application by a broker or seller for the purpose of securing a loan is fraud, and that Defendants

6    "misrepresented the appropriateness of the loan product."[21] *Id.* Additionally, Plaintiffs argue that

7    Defendants recorded false documents, *i.e.*, the NOD, SOT, NOTS, and Trustee's Deed. *Id.*; Opp'n to

8    PK at 11.

9         (9)    <u>RICO</u>. Plaintiffs provide authority for the proposition that an alleged RICO violation

10   must be the proximate cause of a plaintiff's injuries. *Id.* at 17–18 (citing *Anza v. Ideal Steel Supply*

11   *Corp.*, 547 U.S. 451, 455 (2006); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)). Plaintiffs

12   further argue that their RICO claim is based on: "(1) [Bank of America] and Freddie Mac's assertion

13   of rights as Servicer without legal authority; (2) Failing to evidence chain of title possession and

14   indebtedness; (3) Failing to properly substitute foreclosing trustee; (4) Purporting to transfer

15   beneficial interest without endorsement or assignment; and (5) Failing to identify the true owner of

16   the Note and Servicer with contact information in the NOD."[22] *Id.* at 18–19.

17        (10)   <u>UCL</u>. Plaintiffs restate the Complaint's theories that Defendants violated the UCL by

18   recording the NOD, SOT, NOTS, and Trustee's Deed without possessing the legal authority to do so.

19   *Id.* at 19–20.

20              **3.    Defendants' Replies in Support of Motions to Dismiss**

21        Only Bank of America and Freddie Mac submitted a reply. They refused to address the quiet

22   title and fraud in the concealment arguments on the basis that those causes of action were not pled

23   against them. Defs. Bank of America and Freddie Mac's Reply Br. at 8–9. They also argue that,

24   contrary to Plaintiffs' assertions, there are no circumstances that justify an exception to the tender rule

25   in this case. *Id.* at 2–4. As to TILA, they repeat their argument that the claim is time-barred. *Id.* at 7.

26   As to RICO, they appear to argue that because Plaintiffs "have no claim to contest any of the

27

28   [21] To support this assertion, Plaintiffs include an incomplete citation to "*U.S. v. Robinson*, 4thCircuit, 2004."
     [22] Plaintiffs do not include this list in the Opposition to PK.

purported issues—assertion of servicer rights, evidence of chain of title possession, trustee substitutions, transfer of beneficial interest, and identifying the true owner of the note and servicer of the note"—Plaintiffs also have no injury. *See id.* at 9. Bank of America and Freddie Mac also repeat their argument that Plaintiffs have failed to allege a pattern of racketeering activity. *Id.*

### E.   Motion to Expunge

#### 1.   PK Properties' Motion

PK Properties moves to expunge the Notice of Pending Suit ("Notice of *Lis Pendens*"), which Plaintiffs recorded against the Property on February 20, 2013. The gist of PK Properties' argument is that Mr. Heisner's criminal activities had nothing to do with PK Properties' purchase of the Property at the trustee's sale.

First, PK Properties concedes that it had in fact hired Heisner & Associates, of which Mr. Heisner is the owner, to purchase real property at foreclosure sales. Mot. to Expunge at 6. However, PK Properties asserts that it "does not participate in any aspect of the real estate purchase/sale process." *Id.* at 6; Weber Decl. ¶ 6.

Second, PK Properties argues that the trustee's sale was fairly and publicly conducted. *Id.* at 6–7. Specifically, PK Properties asserts that although the Property was purchased by a Heisner & Associates employee on behalf of PK Properties, Mr. Heisner had nothing to do with the purchase. *Id.* at 7. Rather, Mr. LaBombard attended the sale and purchased the Property. *Id.*; LaBombard Decl. ¶ 4. According to PK Properties, Mr. LaBombard has never been accused of any price-fixing activities. Mot. to Expunge at 7; LaBombard Decl. ¶ 3.

Third, PK Properties explains that Mr. Heisner's plea agreement only covers the period from approximately August 2008 to January 2011. *Id.* at 3; *see* Compl. Ex. C ¶ 2. Because the trustee's sale of the Property occurred nearly a year later in December 2011, PK Properties argues that Plaintiffs cannot establish by a preponderance of the evidence the probable validity of its real property claim. *Id.* at 3, 8.

#### 2.   Plaintiffs' Opposition to Motion to Expunge

Plaintiffs make five arguments in their response to the Motion to Expunge. First, Plaintiffs argue that they have both stated a "real property claim" and "probably viable" causes of action based

18

on the Defendants' recording of documents under allegedly false legal authority. Pl.'s Opp'n Br. to Mot. to Expunge Notice of *Lis Pendens* at 3–4. Second, Plaintiffs argue that they have stated facts against each of the Defendants, including PK Properties. *Id.* at 4. Third, Plaintiffs argue that a trustee's powers are limited by the trust document—in this case, the PSA—and that Plaintiffs have right to challenge the trustee's authority under the trust document. *Id.* at 4–6. Fourth, Plaintiffs argue that they have properly alleged claims of slander of title, wrongful foreclosure, and other causes of action. *Id.* at 6–9. Fifth, Plaintiffs argue that they have stated a cause of action for violation of section 2923.5 of the California Civil Code. *Id.* at 9–10.

### 3. PK Properties' Reply in Support of Motion to Expunge

In its reply brief, PK Properties restates its argument that Plaintiffs have failed to establish the probable validity of a claim to the Property. Def. PK Properties' Reply Br. to Opp'n to Mot. to Expunge *Lis Pendens* at 1–2. Specifically, PK Properties argues that Plaintiffs have failed to file any declarations or other evidence to show the probable validity of their claims. *Id.* at 2.

## III. JUDICIAL NOTICE

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). In addition, the court may take judicial notice of "matters of public record," but not facts that may be "subject to reasonable dispute." *Id.* (citing *Lee*, 250 F.3d at 689).

Bank of America, Freddie Mac, and Trustee Corps request judicial notice of five publicly recorded documents: the DOT, NOD, SOT, NOTS, and Trustee's Deed. Plaintiffs do not object to

United States District Court
Northern District of California

1    judicial notice of the documents themselves as public records. However, Plaintiffs object to judicial

2    notice of any factual matters contained therein. Pl.'s Objection to BOA RJN at 2. Bank of America

3    and Freddie Mac reply that a court may take judicial notice of the fact of the document's recordation,

4    the date it was recorded and executed, the parties to the transaction reflected by the recorded

5    document, and the document's legally operative language. Defs. Bank of America and Freddie Mac's

6    Reply to Pl.'s Objection to BOA RJN at 2 (citing state court cases from California).

7         Much of Plaintiffs' Complaint is premised on the theory that Bank of America improperly

8    acted as the beneficiary of the DOT in recording the documents at issue. As discussed below in the

9    context of the slander of title claim, whether Bank of America acted within its authority is subject to

10   reasonable dispute. *See* Part IV.C.2.a., *infra*; Compl. ¶ 12, Ex. B at 5–6, 11, 13, 14, 15, 18.

11   Accordingly, the Court declines to infer from the recorded documents that Bank of America remained

12   the beneficiary under the DOT at the time each document was recorded.

13        Upon filing their Reply, Bank of America and Freddie Mac submitted a supplemental request

14   for judicial notice. *See* BOA Supplemental RJN. They request judicial notice of four exhibits

15   regarding the procedural history of Plaintiffs' action filed against Bank of America in California state

16   court in December 2011, which is described above. *Id.* Exs. 1–4. The Court takes judicial notice of

17   these documents as public records but does not rely on any facts therein to resolve the Motions.

18   **IV.    ANALYSIS OF MOTIONS TO DISMISS**

19        **A.    Legal Standard**

20        A complaint may be dismissed for failure to state a claim upon which relief can be granted

21   under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of

22   a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l*

23   *v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the

24   pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

25   pleading which sets forth a claim for relief must contain . . . a short and plain statement of the claim

26   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

27        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

28   "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

United States District Court
Northern District of California

20

moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id.* at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id.* at 545 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

The Court may deny leave to amend where amendment would be futile or if the claim is legally insufficient. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## B.   Breach of Contract

Plaintiffs allege in their first and second causes of action that Defendants breached (1) the DOT by causing a defective NOD to be recorded and improperly invoking the power of sale; and (2) the PSA by failing to assign the DOT to the Securitized Trust within the timeframe required by the PSA. Compl. ¶¶ 20–25, 30. Plaintiffs do not specifically allege the existence or breach of any distinct implied agreement. The Court treats Plaintiffs' claims for "Breach of Contract" and "Breach of Implied Agreement" as breach of contract claims.

### 1.   The DOT

#### a.   Background law

Under California law, "[a] contract is either express or implied." *Retired Emps. Ass'n of*

*Orange Cnty., Inc. v. County of Orange*, 52 Cal. 4th 1171, 1178 (2011) (citing Cal. Civ. Code § 1619). "The existence and terms of an express contract are stated in words." *Id.* (citing Cal. Civ. Code § 1620). "The existence and terms of an implied contract are manifested by conduct." *Id.* (citing Cal. Civ. Code § 1621). "The distinction reflects no difference in legal effect but merely in the mode of manifesting assent." *Id.* "Accordingly, a contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Id.* (internal quotation and citation omitted).

The elements of a cause of action for breach of an express or implied contract are the same. *See Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 525 (2009). The elements are: (1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

"Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007). Thus, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated. *See Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1154 (E.D. Cal. 2010).

A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous. *Barrous v. BP P.L.C.*, No. 10-CV-2944-LHK, 2010 WL 4024774, at *4 (N.D. Cal. Oct. 13, 2010). By contrast, what the parties intended by an ambiguous contract is a factual determination. *United States v. Plummer*, 941 F.2d 799, 803 (9th Cir. 1991). Thus, "[w]here the language 'leaves doubt as to the parties' intent,' the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008) (quoting *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986); *see also Trs. of Screen Actors Guild-Producers Pension and Health Plans v. NYCA, Inc.*, 572 F.3d 771, 777 (9th Cir. 2009)).

### b.      Application to facts

Plaintiffs assert a breach of the DOT based on two theories. First, they allege that Defendants used "robo-signers." Compl. ¶ 22. Plaintiffs allege that the SOT was improperly signed by a Trustee Corps representative when it should have been signed by the DOT's beneficiary. *Id.* at Ex. B.

United States District Court
Northern District of California

1    However, the SOT indicates on its face that Rande Johnsen signed as Director of Trustee Corps in

2    Trustee Corps' capacity "as Attorney in Fact" to the beneficiary, Bank of America. BOA RJN Ex. C.

3    Section 1095 of the California Civil Code allows for execution by an attorney in fact, requiring only

4    that "[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must

5    subscribe the name of his principal to it, and his own name as attorney in fact." A court in this district

6    recently held that a substitution of trustee may properly be executed by the entity that is being

7    substituted as trustee where that entity is properly acting as the attorney in fact for the beneficiary and

8    the deed of trust does not prohibit such a substitution. *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-

9    cv-03646 JSC, 2013 WL 2299601, at *14–*15 (N.D. Cal. May 24, 2013) (citing Cal. Civ. Code

10   § 1095). Finding *Natividad* persuasive and directly on point, the Court concludes that the robo-signing

11   argument here fails.[23] *See also Baldoza v. Bank of America, N.A.*, C-12-05966 JCS, 2013 WL 978268,

12   at *13 (N.D. Cal. Mar. 12, 2013) ("District courts have consistently refused to find that a plaintiff can

13   state a claim on the basis of a conclusory allegation of robo-signing, absent some factual support.")

14   (collecting cases).

15           Second, Plaintiffs allege that "[n]either Bank of America, Freddie Mac, [nor] Trustee Corps

16   were the Lender, Beneficiary or Trustee after the sale to the securitized trust . . . . Therefore Bank of

17   America, Freddie Mac, and Trustee Corps breached the acceleration remedies provisions of the Deed

18   of Trust in recording or causing the NOD to be recorded . . . in that the NOD was noticed by a trustee

19   not authorized to act by the true beneficiaries, the certificate holders of the [S]ecuritized [T]rust."

20   Compl.  ¶ 23. This argument relies on the premise that Bank of America successfully divested itself of

21   its interest in the DOT, but that the Securitized Trust did not successfully acquire that same interest.

22   This argument also relies on a mutually exclusive premise—that the Defendants are actually parties to

23   the DOT such that it can be enforced against them in a breach of contract claim.[24] Plaintiffs have not

24   alleged facts showing that, if its interest was transferred, Bank of America remained a party to the

25   DOT. Plaintiffs also have not alleged the factual basis for their implicit assertion that Freddie Mac

---

[23] As an additional argument presented for the first time in their Opposition, Plaintiffs assert that the NOD was executed by a robo-signer, which caused a breach of the DOT. Opp'n to BOA at 4, 6. Because this assertion is not in the Complaint, the Court need not address it. However, the Court notes that the robo-signing argument fails as to the NOD for the same reasons that it fails as to the SOT.

[24] Plaintiffs' theories are not pled in the alternative.

1   was a party to the DOT. Finally, they have not alleged that Trustee Corps or PK Properties were ever

2   parties to the DOT. Thus, the breach of contract claim for breach of the DOT fails.

3          Finally, as discussed in the wrongful foreclosure section below, Plaintiffs have not plausibly

4   pled that any damages they suffered were a result of the alleged breach of the DOT, as opposed to

5   their own default on the loan obligation. *See* Part IV.D.3., *infra*. Accordingly, because amendment

6   would be futile, the breach of contract claim, to the extent that it relies on a theory of breach of the

7   DOT, is DISMISSED with prejudice.

8              **2.      The PSA**

9                  **a.      Background law**

10          "Ninth Circuit district courts have come to different conclusions when analyzing a plaintiff's

11  right to challenge the securitization process . . . ." *Johnson v. HSBC Bank USA, N.A.*, No. 3:11-cv-

12  2091-JM-WVG, 2012 WL 928433, at *2 (S.D. Cal. March 19, 2012). Some courts have allowed such

13  claims to move forward. *Id.* (citing *Schafer v. CitiMortgage, Inc.*, No. CV 11-03919 ODW (FFMx),

14  2011 WL 2437267 (C.D. Cal. June 15, 2011) (denying defendants' motion to dismiss declaratory

15  relief claim, which was based on alleged improper transfer due to alleged fraud in signing of

16  documents); *Vogan v. Wells Fargo Bank, N.A.*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, at

17  *7 (E.D. Cal. Nov. 17, 2011) (allowing UCL claim when plaintiffs alleged that assignment was

18  executed after the closing date of securities pool, "giving rise to a plausible inference that at least

19  some part of the recorded assignment was fabricated"); *Armeni v. America's Wholesale Lender*, No.

20  CV 11-8537 CAS (AGRx), 2012 WL 603242, at *2 (C.D. Cal. Feb. 24, 2012); *Junger v. Bank of

21  America, N.A.*, No. CV 11-10419 CAS (VBKx), 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012).

22          However, the majority position is that plaintiffs lack standing to challenge noncompliance

23  with a pooling and service agreement or other similar agreement unless they are parties to the

24  agreement or third party beneficiaries thereto. *See Aniel v. GMAC Mortg., LLC*, No. C 12-04201

25  SBA, 2012 WL 5389706, at *4 (N.D. Cal. Nov. 2, 2012) (collecting cases); *Almutarreb v. Bank of

26  New York Trust Co., N.A.*, No. C-12-3061 EMC, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012)

27  (disagreeing with *Vogan* and *Johnson* and finding that because plaintiffs were neither parties nor third

28  party beneficiaries to pooling and service agreement, they lacked standing to challenge whether loan

transfer occurred outside agreement's temporal bounds); *Madlaing v. JPMorgan Chase Bank, N.A.*, No. CV F 12-2069 LJO SMS, 2013 WL 2403379, at *8 (E.D. Cal. May 31, 2013) (plaintiff lacked standing to enforce pooling and service agreement because he was neither party to nor intended third-party beneficiary of agreement). This Court follows the majority approach.

### b.    Application to facts

Plaintiffs do not allege that they are parties to or intended third party beneficiaries of the PSA. Accordingly, following the majority position, they do not have standing to enforce the PSA.

Plaintiffs' claim fails for the additional reason that they have not plausibly pled any damages flowing from the alleged breach of the PSA. Assuming that Plaintiffs are correct—that Bank of America failed to properly assign the DOT to the Securitized Trust and that this failure violated the PSA—Plaintiffs have failed to allege how a proper assignment could have prevented them from incurring the attorneys' fees and other costs of removing the purported cloud on the Property.

Because Plaintiffs cannot cure the fact that they do not have standing to challenge the PSA, amendment would be futile. *See Miller*, 845 F.2d at 214; *Madlaing*, 2013 WL 2403379, at *26 (dismissing all claims, including breach of PSA, with prejudice). Accordingly, the breach of contract claim, to the extent that it relies on a theory of breach of the PSA, is DISMISSED with prejudice.

### C.    Slander of Title

#### 1.    Background law

Slander of title "occurs when a person, without privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss." *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 85 (1997). The required elements of a claim for slander of title are "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner Hill*, 205 Cal. App. 4th at 1030.

A "privileged" publication is one made "[i]n a communication, without malice, to a person interested therein [ ] by one who is also interested." Cal. Civ. Code § 47(c)(1). Nonjudicial foreclosure documents are subject to this privilege. *See* Cal. Civ. Code § 2924(d); *see also Ogilvie v. Select Portfolio Serv'g*, No. 12-CV-001654-DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012) (collecting cases). Malice is defined as actual malice, meaning "that the publication was motivated by

hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336. For trustees of deeds of trust, California statute creates the following privilege: "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and amount of the default . . . ." Cal. Civ. Code § 2924(b).

A "direct pecuniary loss" is restricted to:

(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

*Ryan v. Editions Ltd. W., Inc.*, No. C–06–4812–PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec. 27, 2007) (quoting *Appel v. Burman*, 159 Cal. App. 3d 1209, 1215 (1984); Rest. 3d Torts § 633). Pecuniary loss may be comprised of attorneys' fees necessary to quiet title to the allegedly slandered property, but not attorneys' fees incurred in the slander of title action itself. *Id.* ("In an action for disparagement of title the plaintiff may recover as damages the expense of legal proceedings necessary *to remove a cloud* on the plaintiff's title. While attorney's fees are allowed for the fees incurred *in clearing title*, fees incurred in prosecuting a slander of title action are not.") (citation omitted) (emphasis added).

### 2.    Application to facts

#### a.    Bank of America

As to the first element, Plaintiffs have adequately pled that there was a publication by Bank of America because the foreclosure documents in question—*e.g.*, the SOT, NOTS and Trustee's Deed— are matters of public record. *See* BOA RJN Exs. B–E; *Ghuman v. Wells Fargo Bank*, No. 1:12-CV-00902-AWI-BAM, 2013 WL 552097, at *4 (E.D. Cal. Feb 13, 2013) (recording of assignment of deed of trust, substitution of trustee, and notices of default and trustee's sale constituted publication).

As to the second element, Plaintiffs have adequately pled that Bank of America acted with malice and therefore without privilege. Plaintiffs allege that Bank of America transferred its interest in the Property—the DOT—to Freddie Mac and subsequently initiated foreclosure as if it had retained

United States District Court
Northern District of California

United States District Court
Northern District of California

1  its interest. This can amount to reckless conduct that destroys the conditional privilege. *See*

2  *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 975 (N.D. Cal. 2012) (allegation that notice of

3  trustee's sale had been recorded with malice because of alleged lack of authority was sufficient to

4  meet second element for purposes of motion to dismiss) (quoting *Gudger v. Manton*, 21 Cal. 2d 537,

5  545 (1943)) ("an express finding of lack of good faith, or of actual malice . . . would destroy the

6  privilege") (quotation marks omitted).

7  As to the third element, Plaintiffs have adequately pled that the NOD and SOT were false on

8  the theory that Bank of America caused them to be executed without having any beneficial interest in

9  the DOT. The facts are not overwhelming but, for the purposes of a motion to dismiss, they are

10  sufficient. First, the "Forensic Lender Discovery" report attached to the Complaint states that a

11  HAMP loan modification approval dated November 15, 2011 lists Freddie Mac as the "investor,"

12  which the author asserts is the same thing as the "owner." *See* Compl. Ex. B, at 5–6, 11, 13, 14 15, 18.

13  The loan modification approval is not attached to the report. The Court also notes that this purported

14  approval is dated after the foreclosure was initiated in July 2011. Second, the report includes a

15  screenshot from Freddie Mac's website for a "Self-Service Lookup" page. It appears that the personal

16  information of one of the Plaintiffs is filled in and, on the next page, is a screenshot of this statement:

17  "Yes. Our records show that Freddie Mac is the owner of your mortgage." *Id.* Ex. B at 16–17. This is

18  undated. There is nothing else in the record to conclusively indicate that Bank of America owned the

19  DOT (or otherwise had authority) at the time that the NOD and SOT were executed.[25]

20  However, Plaintiffs claim fails on the fourth element. Plaintiffs have not adequately pled that

21  they suffered pecuniary loss as a direct result of Bank of America's publications. They allege that they

22  suffered harm based on two theories: (1) the vendibility of their property was impaired; and (2) they

23

24  [25] Plaintiffs concede that Bank of America may have had the right to service their loan even after securitization. Compl.
¶ 39. The Court notes that Bank of America might have the authority, as a servicer, to foreclose based on the PSA or some

25  other agreement. *See* Cal. Civ. Code § 2924(a)(1) ("The trustee, mortgagee, or beneficiary, *or any of their authorized
agents* shall first file for record . . . a notice of default.") (emphasis added); Cal. Civ. Code § 2924(a)(6) ("No agent of the

26  holder of the beneficial interest, . . . original trustee or substituted trustee . . . may . . . commence the foreclosure process
except when acting within the scope of authority designated by the holder of the beneficial interest."). *See also Javaheri v.*

27  *JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW(FFMx), 2012 WL 6140962 (C.D. Cal. Dec. 11, 2012) (finding
that entity had right to initiate foreclosure as agent because it was authorized by pooling and servicing agreement to do so

28  in its capacity as servicer). However, there is nothing in the pleadings to indicate whether Bank of America was designated
as a servicer and, if such a designation occurred, whether this included the right to foreclose.

incurred attorneys' fees in bringing "this action to cancel the instruments casting doubt on" their title. Compl. ¶¶ 41–42.

First, the vendibility theory fails because Plaintiffs have not alleged—and cannot allege—that they suffer harm from the inability to sell a Property that do not own. Nor do Plaintiffs allege that they suffer such harm because they would still own the Property, were it not for the alleged flaws in the foreclosure process. *See* Part IV.D.3., *infra*. Plaintiffs fail to allege any facts to support their "bare assertion" of impaired vendibility. *See Ogilvie*, 2012 WL 3010986, at *4 (dismissing similar slander of title claim for failure to properly allege, *inter alia*, pecuniary harm based on impaired vendibility).

Second, the attorneys' fees theory fails because Plaintiffs have failed to properly allege that they have incurred any fees "to remove the doubt cast upon vendibility or value." *See Ryan*, 2007 WL 4577867, at *12; *Ogilvie*, 2012 WL 3010986, at *4 (dismissing similar slander of title claim for failure to properly allege, *inter alia*, pecuniary harm based on attorneys' fees incurred in bringing slander of title action); *Christiansen*, 2012 WL 4716977, at *6 (same); *Mena v. JP Morgan Chase Bank, N.A.*, 12-1257 PSG, 2013 WL 150716 (N.D. Cal. Jan. 14, 2013) (citing *Ogilvie*, 2012 WL 3010986, at *4) (dismissing similar slander of title claim for failure to properly allege pecuniary harm based on attorneys' fees incurred in bringing slander of title action); *Nguyen v. JP Morgan Chase Bank, N.A.*, CV12-04183, 2012 WL 4942816 PSG (N.D. Cal. Oct. 17, 2012) (same).

Plaintiffs state that the recording of the DOT, SOT, NOTS, and Trustee's Deed "made it necessary for Plaintiffs to retain attorneys and to bring this action to cancel the instruments casting doubt on" their title. *See* Compl. ¶ 42. But this is merely a "formulaic recitation" of an element devoid of any elaboration, and it does not suffice. *See Ashcroft*, 556 U.S. at 678. Because Plaintiffs fail to properly allege that they suffer any direct harm in the form of impaired vendibility, it follows that they fail to properly allege that they suffer any indirect harm in the form of attorneys' fees to clear doubt regarding vendibility. Similarly, to the extent that Plaintiffs intend to allege that the attorneys' fees associated with bringing their quiet title claim (seventh cause of action) constitute pecuniary harm here, this theory also fails because, as discussed below, they have failed to properly allege a quiet title claim. *See* Part IV.G., *infra*. Without a viable claim for quiet title, Plaintiffs cannot plausibly allege that they suffered any expenses "reasonably necessary . . . to remove the doubt cast

1  upon the vendibility or value" of the Property. *See Ryan*, 2007 WL 4577867, at *13.

2      The Court notes that at least two courts have held that similar allegations of pecuniary harm

3  are sufficient to survive a motion to dismiss. *See Barrionuevo*, 885 F. Supp. 2d at 975 (plaintiffs

4  stated a claim for slander of title); *Ghuman*, 2013 WL 552097, at *4 (finding pecuniary harm element

5  met by expenditure of resources seeking to cancel instruments, but dismissing slander of title claim on

6  failure to plead falsity). However, unlike this case, both of those cases involved a challenge to

7  foreclosure before the trustee's sale, such that it might be argued that vendibility was actually

8  impaired. *See Barrionuevo*, 885 F. Supp. 2d at 970; *Ghuman*, 2013 WL 552097, at *2.

9      Accordingly, the slander of title claim against Bank of America is DISMISSED with leave to

10  amend.

11                          **b.      Freddie Mac**

12      Plaintiffs' allegations regarding the slander of title claim identify only Bank of America and

13  Trustee Corps as parties that carried out the foreclosure. Compl. ¶¶ 39–42. The documents themselves

14  do not reflect that Freddie Mac had any role in the execution or recordation of the SOT, NOD, NOTS,

15  or Trustee's Deed. BOA RJN Exs. B–E. Accordingly, the slander of title claim against Freddie Mac is

16  DISMISSED with leave to amend.

17                          **c.      Trustee Corps**

18      Plaintiffs have not plausibly alleged facts showing the absence of privilege of Trustee Corps'

19  publications. Plaintiffs make the conclusory allegation that Trustee Corps acted with malice and a

20  reckless disregard for the truth by recording the NOTS and Trustee's Deed when it was not validly the

21  trustee of the DOT. Compl. ¶ 40. However, Plaintiffs have not plausibly alleged that Trustee Corps

22  was aware, or should have been aware, that it was not validly the trustee when it recorded these

23  documents. Further, Plaintiffs allege that Trustee Corps was acting improperly when it recorded the

24  SOT (1) because of robo-signing; and (2) because Bank of America was not the beneficiary, and thus

25  Trustee Corps was not the trustee, at the time the SOT was executed. The robo-signing theory is

26  rejected as discussed in the breach of contract claim, above. *See also Baldoza*, 2013 WL 978268, at

27  *13. As to the second theory, Plaintiffs have not pled facts to suggest that Trustee Corps should have

28  been able to discover Bank of America's alleged lack of authority. Accordingly, the slander of title

United States District Court
Northern District of California

United States District Court
Northern District of California

1   claim against Trustee Corps is DISMISSED with leave to amend pursuant to the privilege provided by

2   section 47 of the California Civil Code.

3   **d.   PK Properties**

4   As an additional argument presented for the first time in their Opposition, Plaintiffs assert that

5   PK Properties is liable for slander of title because its concealment of Mr. Heisner's bid-rigging caused

6   the wrongful recording of the Trustee's Deed. Opp'n to PK at 4. Because this assertion is not in the

7   Complaint, the Court need not address it. However, the Court notes that PK Properties did not record

8   the Trustee's Deed, and therefore the publication requirement is not met. *See* Weber Decl. Ex. 3

9   (showing Trustee Corps as the signatory of the Trustee's Deed).

10   Plaintiffs' attempt to allege slander of title against PK Properties also fails because they have

11   not sufficient alleged injury. Plaintiffs assert in the Opposition that were it not for the concealment of

12   the bid-rigging activities, the DOT's beneficiary would have been able "to recoup losses for which

13   otherwise Plaintiffs were liable and/or the Property would not have been sold." Opp'n to PK Mot. to

14   Dismiss, at 4. However, Plaintiffs do not elaborate on these naked assertions and, without more, they

15   do not constitute a plausible allegation of injury. Accordingly, the slander of title claim against PK

16   Properties is DISMISSED with leave to amend.

17   **D.   Wrongful Foreclosure**

18   **1.   Background law**

19   In California, a "deed of trust containing a power of sale . . . conveys nominal title to property

20   to an intermediary, the 'trustee,' who holds that title as security for repayment of [a] loan to [a] lender,

21   or 'beneficiary.'" *Kachlon*, 168 Cal. App. 4th at 334 (citations omitted). The "trustee in nonjudicial

22   foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and

23   beneficiary." *Id*. at 335. The trustee's duties "are twofold: (1) to 'reconvey' the deed of trust to the

24   trustor upon satisfaction upon satisfaction of the debt owed to the beneficiary, resulting in a release of

25   the lien created by the deed of trust, or (2) to initiate nonjudicial foreclosure on the property upon

26   trustor's default, resulting in a sale of the property." *Id*. at 334. The "trustee, mortgagee, or

27   beneficiary, or any of their authorized agents" initiate the nonjudicial foreclosure process by filing a

28   notice of default. Cal. Civ. Code § 2924(a)(1).

California Courts of Appeal have identified the following elements of a claim for wrongful foreclosure: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona*, 202 Cal. App. 4th at 104.

"Several [federal] courts have recognized the existence of a valid cause of action for wrongful foreclosure where a party alleged not to be the true beneficiary instructs a trustee to file a [n]otice of [d]efault and initiate nonjudicial foreclosure." *Barrionuevo*, 885 F. Supp. 2d at 973–74 (collecting cases) (wrongful foreclosure claim survived motion to dismiss where plaintiff alleged that predecessor bank had securitized loan before transferring assets to successor bank such that successor bank lacked authority to foreclose); *see also Ohlendorf v. Am. Home Mortg. Serv'g*, 279 F.R.D. 575, 583 (E.D. Cal. 2010) (wrongful foreclosure claim survived motion to dismiss where plaintiff alleged that the Mortgage Electronic Registration System ("MERS") was beneficiary when notice of default was initiated, but notice of default listed a bank as beneficiary, MERS later filed backdated assignment of beneficial interest to trustee, and eleven seconds later trustee recorded a backdated assignment of mortgage to bank); *Sacchi*, 2011 WL 2533029 at *6 (wrongful foreclosure claim survived motion to dismiss where judicially noticed documents showed that bank executed a substitution of trustee when bank had no beneficial interest, making all subsequent recordings by trustee, including notice of trustee's sale, invalid); *Javaheri v. JPMorgan Chase Bank, N.A.*, CV10-08185 ODW FFMX, 2011 WL 2173786, at *5–*6 (C.D. Cal. June 2, 2011) (wrongful foreclosure claim survived motion to dismiss where plaintiff alleged that predecessor bank had sold mortgage to security, which then transferred mortgage to another security, such that successor bank could not have obtained mortgage when it acquired predecessor bank's assets; successor bank also had not recorded ownership of mortgage).

California courts have generally been consistent with this approach, allowing claims to go forward where plaintiffs can properly allege that the wrong party foreclosed as the basis for a wrongful foreclosure claim. *See Gomes*, 192 Cal. App. 4th at 1156 (upholding dismissal of wrongful

United States District Court
Northern District of California

1    foreclosure action and noting as "significant" that cases cited by plaintiff permitting wrongful

2    foreclosure action "identified a *specific factual basis* for alleging that the foreclosure was not initiated

3    by the correct party" whereas plaintiff had failed to identify "*any* factual basis") (emphasis in

4    original). However, plaintiffs are not permitted to bring a claim simply to determine whether the

5    person initiating foreclosure is authorized. *See Robinson*, 199 Cal. App. 4th at 46, 46 n.5 (holding that

6    nonjudicial foreclosure system does not allow plaintiffs to bring preemptive suit to challenge standing

7    of entity to initiate foreclosure, but noting that borrower can seek to enjoin trustee's sale or set aside

8    sale); *Robertson v. Citibank, N.A.*, No. C 12-02996 JSW, 2013 WL 752491, at *4 (N.D. Cal. Feb. 27,

9    2013) (interpreting *Robinson* and *Gomes* to preclude judicial action to determine whether person

10   initiating foreclosure process is indeed authorized).

11          Prejudice is an important element of a wrongful foreclosure claim. One California Court of

12   Appeal stated as follows:

13          Prejudice is not presumed from 'mere irregularities' in the process . . . Even if MERS lacked
            authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by
14          MERS's purported assignment, and there is no allegation to this effect. Because a promissory
            note is a negotiable instrument, a borrower must anticipate it can and might be transferred to
15          another creditor. As to plaintiff, an assignment merely substituted one creditor for another,
            without changing her obligations under the note. *Plaintiff effectively concedes she was in*
16          *default, and she does not allege that the transfer to [another lender] interfered in any manner*
            *with her payment of the note . . . nor that the original lender would have refrained from*
17          *foreclosure under the circumstances presented.* If MERS indeed lacked authority to make the
            assignment, the true victim was not plaintiff but the original lender, which would have
18          suffered the unauthorized loss of a $1 million promissory note.

19

20   *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1507–1508 (quoting *Fontenot*, 198 Cal.

21   App. 4th at 272 (rejecting plaintiff's theory that sale was invalid because bank lacked authority to

22   initiate sale)) (emphasis added). Accordingly, Plaintiffs must make allegations that prejudice was

23   caused by defects in the foreclosure process, rather than their own default. *See Natividad*, 2013 WL

24   2299601, at *16 (agreeing with analysis in another case that found no prejudice where plaintiff "had

25   defaulted on her mortgage payments, and would have been foreclosed on anyway") (citing *Albano v.*

26   *Wells Fargo Bank, N.A.*, No. 4:12-cv-4018 KAW, 2012 WL 5389922, at *6 (N.D. Cal Nov. 5, 2012)).

27          As part of the prejudice analysis, some courts have also distinguished between pending and

28   completed sales. *Albano*, 2012 WL 5389922, at *7 ("Although some cases have held that the

32

United States District Court
Northern District of California

1  prejudice element of the wrongful foreclosure cause of action could be established by allegations that

2  the wrong companies had initiated the foreclosure process, the facts of those cases are distinct from

3  the facts here, because in this case, the foreclosure sale has already happened.") (citing *Sacchi*, 2011

4  WL 2533029, at *9–10 (allowing wrongful foreclosure claim to go forward where foreclosure sale

5  had not yet taken place); *Tamburri*, 2011 WL 6294472 (same)); *Natividad*, 2013 WL 2299601, at *16

6  (citing *Albano*, 2012 WL 5389922, at *7). Accordingly, courts have found that where the foreclosure

7  sale has already occurred, "there is no longer a 'threat' of foreclosure" and, without any allegations

8  that the foreclosure sale would not have occurred, a plaintiff fails to properly allege prejudice. *See*

9  *Albano*, 2012 WL 5389922, at *7.

### 2.     Tender Rule

11  As a general rule under California law, "an action to set aside a trustee's sale for irregularities

12  in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for

13  which the property was security." *Arnolds*, 158 Cal. App. 3d at 578; *see also Karlsen v. Am. Sav. &*

14  *Loan Assn.*, 15 Cal. App. 3d 112, 117 (1971) ("[a] valid and viable tender of payment of the

15  indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"). "[T]he

16  rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale

17  procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs."

18  *Barrionuevo*, 885 F. Supp. 2d at 969 (quotation marks omitted); *Lester v. J.P. Morgan Chase Bank*,

19  No. C 12-05491 LB, 2013 WL 633333, at *8 (N.D. Cal. Feb. 20, 2013).

20  The tender rule is not absolute. Courts have discretion to excuse the tender requirement where

21  its application would be inequitable. *See Pantoja v. Countrywide Home Loans*, 640 F. Supp. 2d 1177,

22  1184 (N.D. Cal. 2009); *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997). Courts have identified four

23  exceptions to the tender rule:

24  > 1) if the borrower's action attacks the validity of the underlying debt; 2) if the person who
25  > seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary; 3)
26  > where it would be inequitable to impose such a condition on the party challenging the sale;
   > and 4) where the deed is void on its face.

27  *Natividad*, 2013 WL 2299601, at *16 (quoting *Albano*, 2012 WL 5389922, at *7).

28  Several courts have refused to apply the tender requirement where plaintiff alleges that the

United States District Court
Northern District of California

1  defendant lacks authority to foreclose on the property and, thus, that any foreclosure sale would be

2  void rather than merely voidable. *Lester*, 2013 WL 633333, at *10 (dismissing claims challenging

3  bank's authority to foreclose without prejudice on other grounds); *Barrionuevo*, 885 F. Supp. 2d at

4  970–71 (plaintiff stated a claim for wrongful foreclosure); *Albano*, 2012 WL 5389922, at *7–*8 (N.D.

5  (dismissing claims challenging bank's authority to foreclose on other grounds); *Natividad*, 2013 WL

6  2299601, at *16–*17 (same); *Dimock v. Emerald Props. LLC*, 81 Cal. App. 4th 868, 878 (2000)

7  (where an incorrect trustee had foreclosed on a property and conveyed it to a third party, and the

8  conveyed deed was not merely voidable but void, tender was not required).

9      The rationale for this distinction between void and voidable deeds is the equitable policy

10  supporting the tender rule. That is, "tender is required 'based on the theory that one who is relying

11  upon equity in overcoming a voidable sale must show that he is able to perform his obligations under

12  the contract so that equity will not have been employed for an idle purpose.'" *Barrionuevo*, 885 F.

13  Supp. 2d at 971 (quoting *Dimock*, 81 Cal. App. 4th at 876, 97). However, where a sale is void at the

14  outset, rather than voidable, the transaction is a "nullity with no force or effect as opposed to one

15  which may be set aside" in equity. *Id*. (quoting *Dimock*, 81 Cal. App. 4th at 876).

16      Additionally, a number of federal courts sitting in California have drawn a distinction between

17  pending and completed sales. These courts have suggested that while the tender rule is not applicable

18  to cases seeking to prevent a pending sale, it is generally applicable to cases where the sale has

19  already been completed. *See Barrionuevo*, 885 F. Supp. 2d at 970–971 (collecting cases); *Lester*, 2013

20  WL 633333 at *8 (collecting cases); *Giannini v. Am. Home Mortg. Servs., Inc.*, C11-04489 TEH,

21  2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012) ("[W]hile it is sensible to require tender following a

22  flawed sale—where irregularities in the sale are harmless unless the borrower has made full tender—

23  to do so prior to sale, where any harm may yet be preventable, is not.").

        ### 3.  Application to facts

25      Defendants allege that the tender rule bars Plaintiffs claims. In response, Plaintiffs make

26  allegations to support their argument that an exception to the tender rule applies. Specifically,

27  Plaintiffs allege that Trustee Corps lacked the authority to foreclose on the Property because the SOT

28  was improperly executed and thus the Trustee's Deed is void. Compl. ¶¶ 46–47. As discussed above

1    in the slander of title context, Plaintiffs have presented some evidence to support their theory that the

2    SOT is improper because Bank of America had previously sold the DOT. *See* Part IV.C.2.a., *supra*.

3    Thus, Plaintiffs have "identified a specific factual basis for alleging that the foreclosure was not

4    initiated by the correct party." *See Gomes*, 192 Cal. App. 4th at 1156 (emphasis omitted); *see also*

5    *Natividad*, 2013 WL 2299601, at *17 (declining to apply tender rule to dismiss wrongful foreclosure

6    claim similar to that presented here) (citing *Lona*, 202 Cal. App. 4th at 113; *Dimock*, 81 Cal. App. 4th

7    at 878; *Barrionuevo*, 885 F. Supp. 2d, at 971; *Christiansen v. Wells Fargo Bank*, No. C 12–02526

8    DMR, 2012 WL 4716977, at *8 (N.D. Cal. Oct. 1, 2012)).

9         However, the Property is the subject of an already completed sale. *See* BOA RJN Ex. E. The

10   Court is persuaded by other courts' reasoning, which recognizes the soundness of applying the tender

11   rule to completed sales. Without an offer of tender for a completed sale, "irregularities in the sale are

12   harmless." *See Giannini*, 2012 WL 298254, at *3. Accordingly, the Court dismisses Plaintiffs'

13   wrongful foreclosure claims based on the tender rule.

14        Plaintiffs' claim fails for the additional reason that they have not plausibly alleged prejudice.[26]

15   Plaintiffs allege that they were prejudiced by the wrongful foreclosure because they lost their home,

16   their equity in their home, and because they were forced to retain counsel to challenge the foreclosure.

17   Compl. ¶ 48. However, Plaintiffs have failed to plausibly allege that they did not default on their loan

18   obligations, and they have failed to allege any facts to suggest that they would not have been

19   foreclosed upon anyway.[27] *See Natividad*, 2013 WL 2299601, at *16 (citing *Albano*, 2012 WL

20   5389922, at *6). Additionally, the sale has already been completed "so there is no longer a 'threat' of

21   foreclosure. *See Albano*, 2012 WL 5389922, at *7.

22        Accordingly, the wrongful foreclosure claim is DISMISSED with leave to amend.

23   **E.    California Civil Code § 2923.5**

24        The DOT was recorded in December 2008, the NOD in July 2011, and the Trustee's Deed in

25

---

26   [26] To the extent that Defendants must present a trustee's deed to counter an allegation of prejudice, one has been presented
here. BOA RJN Ex. E; *see Lona*, 202 Cal. App. 4th at 107 n.7 (stating in dicta that defendants could not rely on statutory
27   presumption of foreclosure validity in absence of copy of trustee's deed).

[27] In Plaintiffs' Opposition to the Motion to Expunge, Plaintiffs assert that they have alleged the non-existence of default
28   by alleging the non-existence of a beneficiary. However, this is a conclusory allegation, and Plaintiffs do not cite any
authority to support this argument. *See* Opp'n to Mot. to Expunge at 7.

1  December 2011. Compl. ¶ 11, Ex. A; BOA RJN Ex. B. During the period beginning when the DOT

2  was recorded and ending when the Trustee's Deed was recorded, section 2923.5 applied only to deeds

3  of trust recorded from January 1, 2003 to December 31, 2007. Cal. Civ. Code § 2923.5(i) (2011).

4  While section 2923.5 was subsequently amended to remove this requirement, it only became effective

5  on January 1, 2013, well after the relevant documents were recorded. *See* Cal. Civ. Code § 2923.5.

6  Accordingly, section 2923.5 does not apply here. *See Stephens v. World Sav. Bank*, No. C 13-277

7  CW, 2013 WL 664615, at *1–*3, * (N.D. Cal. Feb. 22, 2013) (applying former version of section

8  2923.5 to claims based on notices of default recorded in 2010 and 2012, holding that plaintiffs had not

9  established a prima facie case that former version of statute was violated because relevant deed of

10  trust was not recorded between January 1, 2003 and December 31, 2007).

11       Furthermore, the remedy for a violation of section 2923.5 is limited to "postponement of the

12  foreclosure sale to allow compliance." *Roberts v. J.P. Morgan Chase Bank*, Nos. 09-CV-01855-LHK,

13  09-CV-01879, 2011 WL 864949, at *5 (N.D. Cal. Mar. 11, 2011) (internal citations omitted) (citing

14  *Mabry*, 185 Cal. App. 4th at 223, 231, 235). It "does not create a right to a loan modification, nor does

15  it have any effect on a completed foreclosure sale." *Roberts*, 2011 WL 864949, at *5 (citations

16  omitted). Here, the foreclosure sale has already been completed. *See* Weber Decl., Ex. 3. Accordingly,

17  no remedy is available to Plaintiffs under section 2923.5, and amendment would be futile. The section

18  2923.5 claim is DISMISSED with prejudice.

19      **F.**    **TILA**

20          **1.**    **Background law**

21       TILA is a consumer protection statute that aims to "avoid the uninformed use of credit." 15

22  U.S.C. § 1601(a). TILA "has the broad purpose of promoting 'the informed use of credit' by assuring

23  'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S.

24  555, 559 (1980) (quoting 15 U.S.C. § 1601). Under TILA, creditors must provide borrowers with

25  "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage

26  rates of interest, and the borrower's rights." *Beach*, 523 U.S. at 412. The statute is remedial in nature

27  and is therefore to be construed broadly in favor of the consumer. *Jackson v. Grant*, 890 F.2d 118,

28  120 (9th Cir. 1989). Even "technical or minor violations" of TILA or its regulations may give rise to

United States District Court
Northern District of California

36

liability on the part of the creditor. *Valdez v. America's Wholesale Lender*, No. C 09-02778 JF (RS), 2009 WL 5114305, at *2 (N.D. Cal. Dec. 18, 2009) (citations omitted).

TILA provides rescission as a remedy for certain transactions, but residential mortgage transactions are expressly excluded. 15 U.S.C. § 1635(e)(1); *see also* 15 U.S.C. § 1602(w) (defining "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest . . . created or retained against the consumer's dwelling to finance the acquisition or initial construction of such a dwelling). Also excluded are refinancing transactions. 15 U.S.C. § 1635(e)(2) (excluding any "transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property"). Additionally, the right to rescission expires three years after the consummation of the transaction, or when the property is sold, whichever occurs first. 15 U.S.C. § 1635(f).

However, TILA's requirements regarding disclosure do apply to residential mortgage transactions, and violations of these disclosure requirements can give rise to a claim for damages. *See In re Schweizer*, 354 B.R. 272, 280–281 (D. Idaho 2006) (holding that while plaintiff could not assert rescission claim under TILA because loan was for residential mortgage, debtor nevertheless had "other important rights under the law") (citing 15 U.S.C. §§ 1601(a),1638(b)).

The statute of limitations for a damages claim under TILA is one year, and generally runs from the date the loan documents are executed. 15 U.S.C. § 1640(e); *see Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Under the discovery rule, the limitations period does not begin to run until the plaintiff discovers, or reasonably should discover, that she has been injured. *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). In addition, a statute of limitations may be equitably tolled if "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). The Ninth Circuit disfavors granting motions to dismiss when equitable tolling is at issue. *Supermail Cargo v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995).

United States District Court
Northern District of California

37

United States District Court
Northern District of California

### 2.     Application to facts

Plaintiffs allege that Defendants violated TILA by failing to provide required material disclosures in connection with the loan associated with the DOT. Compl. ¶ 55. Plaintiffs seek rescission and damages. *Id.* ¶¶ 57–60. Plaintiffs allege that the statute was tolled because Defendants never effectively provided the required disclosures "regarding payment schedules and terms and violations of prohibitions regarding high-rate, high-fee loans." *Id.* ¶ 56.

### a.     Freddie Mac, Trustee Corps, and PK Properties

Bank of America is the only Defendant alleged to have been a party to the DOT or the underlying loan. *See* Compl. ¶ 11. Plaintiffs have not alleged—and cannot allege—any facts regarding how any of the other Defendants could have possibly violated TILA. Because leave to amend would be futile, the TILA claim against Freddie Mac, Trustee Corps, and PK Properties is DISMISSED with prejudice. Even if Plaintiffs could somehow allege that these Defendants were party to the DOT or the loan, the TILA claim fails for the reasons explained below.

### b.     Bank of America

Because more than three years have passed since the loan was consummated, and because the Property has already been sold at the trustee's sale, any right to rescission under TILA has expired. *See* 15 U.S.C. § 1635(f). Additionally, Plaintiffs are not entitled to rescission of their loan because the loan is part of a refinancing transaction.[28] *See* 15 U.S.C. § 1635(e)(2).

Furthermore, Plaintiffs have not properly alleged that their claim for damages is timely. The loan at issue was originated in December 2008. *See* Compl. ¶ 3. The Complaint was filed over four years later, in February 2013. Therefore, Plaintiffs' claim has exceeded the TILA statute of limitations of one year. The claim is timely only if Plaintiffs can establish that the statute of limitations was equitably tolled or did not begin to run at the time the loan was originated. *See Lukovsky*, 535 F.3d at

---

[28] The Court notes that the pleadings do not contain facts regarding whether the refinancing included any new advances, which would potentially make that new portion of the refinancing transaction subject to rescission. *See Johnson v. JPMorgan Chase Bank, N.A.*, 786 F. Supp. 2d 438, 441 (D. Mass. 2011) (TILA's right of rescission "applies in refinancings only 'to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation'") (quoting 12 C.F.R. § 226.23(f)(2), provision from regulations implementing TILA). Regardless, the rescission claim fails for two independent reasons explained in the text: three years have passed since the loan was originated, and the Property has already been sold. *See* 15 U.S.C. § 1635(f).

United States District Court
Northern District of California

1048; *Santa Maria*, 202 F.3d at 1178. Plaintiffs have not pled facts to support the application of either doctrine.

Plaintiffs argue that the statute of limitations did not begin to run because Defendants never made the disclosures required by TILA. The Court rejects this argument because there is no indication that Plaintiffs were inhibited from discovering the nondisclosures that form the basis of the TILA action or that Defendants tricked them into allowing the deadline to pass. *See King*, 784 F.2d at 915; *Quach v. Bank of America, N.A.*, Case No.: 5:13-CV-00467-EJD, 2013 WL 3788827, at *3 (N.D. Cal. July 17, 2013). Where nothing prevents a plaintiff from making herself aware of TILA's statutory and regulatory requirements, a claim filed after the deadline is not timely. *See Hubbard*, 91 F.3d at 79. As one district court has noted, a contrary result would render the one-year statute of limitations meaningless because the existence of a violation would be sufficient to invoke tolling. *See Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009).

When asked at the hearing if there were any other reasons that the statute of limitations should be tolled, Plaintiffs' counsel had no substantive response. In fact, he effectively conceded that the disclosures were true at the time they were made and only later did they allegedly become false. The Court rejects Plaintiffs' argument that such a situation can give rise to a TILA violation. If the disclosures were "clear and accurate" when they were made, then there is no violation of TILA. *See Beach*, 523 U.S. at 412. In any event, Plaintiffs' counsel could not state any grounds for tolling the statute of limitations.

The Court finds that the TILA claim is premised on fundamental misunderstandings of the law, and amendment would be futile. *See Miller*, 845 F.2d at 214; *Quach*, 2013 WL 3788827, at *3 (dismissing with prejudice nearly identical TILA claim). Accordingly, the TILA claim against Bank of America is DISMISSED with prejudice.

### G.   Quiet Title

#### 1.   PK Properties

Plaintiffs' quiet title claim against PK Properties relies on the premise that PK Properties purchased the Property "at an illegal trustee's sale as part of a criminal enterprise to rig bids to obtain selected properties . . . ." Compl. ¶ 65. Plaintiffs appear to assert the following chain of causation, all

based upon Mr. Heisner's plea agreement: In March 2012, Mr. Heisner, "principal" of PK Properties, pled guilty to crimes related to bid-rigging, which took place from approximately August 2008 to January 2011. This means that the December 2011 trustee's sale where PK Properties purchased the Property was illegal and the Trustee's Deed is invalid, and PK Properties is not the rightful owner of the Property. *See id.* ¶ 65.

This argument contains at least two logical gaps. First, the plea agreement concerns Mr. Heisner's illegal activities "beginning as early as August 2008 and continuing until in or about January 2011." *Id.* Ex. C ¶ 2. Plaintiffs' Property was the subject of a trustee's sale that took place on almost a year after the end of the relevant period of the plea agreement, on December 5, 2011. Weber Decl. Ex. 3, at 2. Second, the plea agreement does not mention the participation of any individual other than Mr. Heisner himself. Specifically, it does not mention Mr. LaBombard, the Heisner & Associates employee who attended the trustee's sale for the Property. *See* Compl. Ex. C. It also does not mention PK Properties or Heisner & Associates. *See id.* Accordingly, the plea agreement is not a plausible basis for Plaintiffs' claim that the Property was the subject of an illegal trustee's sale.

Plaintiffs do not allege any other viable theories to connect Mr. Heisner's illegal activities to the trustee's sale of the Property or PK Properties' participation in a bid-rigging enterprise. In their Opposition to the Motion to Expunge, Plaintiffs allege that because (1) Mr. Heisner is the brother-in-law of Pennie Weber, the sole member of PK Properties; and (2) Mr. Heisner is the owner of Heisner & Associates, which was hired by PK Properties, the Court should find it plausible that PK Properties is "in possession of illegal profits from the price fixing scheme, for which Plaintiffs seek relief." Opp'n to Mot. to Expunge, at 4. *Id.* at 5, 6. However, Plaintiffs do not explain the connection between these alleged illegal profits and the sale of the Property that would entitle them to such relief.

Accordingly, the quiet title claim against PK Properties is DISMISSED with leave to amend.

### 2.    Bank of America, Freddie Mac, and Trustee Corps

Although the Complaint alleges generally that "each" of the Defendants claims an interest in the Property, it also alleges that the Trustee's Deed is held by PK Properties. *See id.* ¶¶ 17, 63. Plaintiffs do not provide any justification for their allegations that any Defendants other than PK Properties "claim[] an interest in the Property." Accordingly, it appears that only PK Properties makes

40

United States District Court
Northern District of California

1  a competing claim to the Property.

2  Furthermore, Plaintiffs fail to allege that any Defendants other than PK Properties were even

3  aware of Mr. Heisner's criminal activities, or of Mr. Heisner's association with PK Properties. The

4  Court notes that bid-rigging artificially lowers the price of a property at a trustee's sale, which causes

5  injury primarily to lenders, and only sometimes to borrowers. *See Nomellini Const. Co. v. Modesto*

6  *Sav. & Loan Ass'n*, 275 Cal. App. 2d 114, 118 (1969) ("The proceeds of sale are applied, first, in

7  payment of the costs, fees and expenses of sale, and then in satisfaction, pro tanto, of the obligation to

8  pay which the sale was made. If the net proceeds are sufficient to fully satisfy such obligation, any

9  balance is called surplus . . . . [A]ny surplus remaining after all liens and costs are satisfied is payable

10  to the mortgagor or trustor.") (quoting Ogden, California Real Property Law § 17.71, at 669)

11  (citations omitted).[29]

12  Accordingly, the quiet title claim against Bank of America, Freddie Mac, and Trustee Corps is

13  DISMISSED with leave to amend.

14  **H.   Fraud in the Concealment**

15  **1.   Background law**

16  The elements of a properly pled fraud claim are: "(a) misrepresentation (false representation,

17  concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to

18  induce reliance; (d) justifiable reliance; and (e) resulting damage." *Philipson & Simon v. Gulsvig*, 154

19  Cal. App. 4th 347, 363 (2007) (quoting *Agric. Ins. Co. v. Superior Court*, 70 Cal. App. 4th 385, 402

20  (1999); 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 676). "To state a claim for fraud by

21  concealment, a plaintiff must assert that the 'defendant [was] under a duty to disclose the fact to the

22  plaintiff.'" *Gayduchik v. Countrywide Home Loans, Inc.*, 2:09-CV-03524 JAMGGH, 2010 WL

23  1737109, at *3 (E.D. Cal. Apr. 22, 2010) (quoting *Blickman Turkus, LP v. MF Downtown Sunnyvale*,

[29] This potential injury to lenders is noted in the plea agreement, as well as other documents filed in the case against Mr. Heisner. For example, the plea agreement attached to the Complaint identifies "mortgage holders" as a class of entities affected by Mr. Heisner's criminal activities. Compl. Ex. C ¶ 4 (in passage asserting interstate impact of crimes, noting that out-of-state mortgage holders received proceeds that were affected by bid-rigging). *See also United States v. Heisner*, 4:12-cr-00084-PJH (N.D. Cal. Nov. 27, 2012), Dkt. No. 14-1 (Attach. A to U.S. Mot. for Authorization to Establish Procedure for Crime Victim Notification) ("According to court documents, these conspirators paid and received money that otherwise would have gone to pay off the mortgage and other holders of debt secured by the properties, and, in some cases, the defaulting homeowner.").

1   *L.L.C.*, 162 Cal. App. 4th 858, 868 (2008)).

2        In federal courts, a special pleading standard applies when alleging fraud. Specifically, "a

3   party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

4   knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

5   The plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy*

6   *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted). "The plaintiff must set forth what

7   is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541,

8   1548 (9th Cir. 1994).

9               **2.       Application to facts**

10              **a.       Bank of America, Freddie Mac, and Trustee Corps**

11       Like Plaintiffs' quiet title claim, the fraud in the concealment claim is based on the purported

12  connection between Mr. Heisner's illegal activities and the trustee's sale of the Property. This claim

13  also fails because Plaintiffs have not alleged that any Defendants other than PK Properties were aware

14  of any bid-rigging. The Court also notes that, as discussed above, lenders are the typical victims of

15  bid-rigging activities. *See* Part IV.G.2., *supra*.

16       In their Oppositions, Plaintiffs present two new theories for the first time. Opp'n to BOA at

17  17. Because these theories are not pled in the Complaint, the Court need not address them. However,

18  the Court notes that they are also without merit. First, Plaintiffs appear to argue that Defendants

19  misrepresented the appropriateness of the loan and thus wrongly induced Plaintiffs to enter into the

20  loan. *See id.* However, Plaintiffs do not explain how this claim could possibly apply to any of the

21  Defendants besides Bank of America, the only Defendant that was a party to the DOT and the

22  underlying loan. Furthermore, the allegations are insufficiently specific to meet the Rule 9(b) pleading

23  standard. For example, Plaintiffs do not allege any facts regarding how the loan product was

24  inappropriate, nor do they even allege what type of loan product is at issue. *See id.* Thus, they have

25  failed to explain "what is false or misleading" about the alleged misrepresentation. *See Decker*, 42

26  F.3d at 1548.

27       Second, Plaintiffs argue in their Opposition that "Defendants recorded false documents"—

28  specifically, the NOD, SOT, NOTS, and Trustee's Deed. *See id.* However, they provide no further

United States District Court
Northern District of California

42

1 allegations regarding how Plaintiffs detrimentally relied on such recordings. Accordingly, this theory

2 fails to meet both the Rule 12(b)(6) and the Rule 9(b) pleading standards.

3      Accordingly, the fraud in the concealment claim against Bank of America, Freddie Mac, and

4 Trustee Corps is DISMISSED with leave to amend.

### b.      PK Properties

6      Plaintiffs allege that if they had known about the facts giving rise to the plea agreement, then

7 they would not have entered into the Stipulated Judgment in state court and made payments

8 thereunder. *See* Compl. ¶ 69. However, this claim fails for the reasons explained below.

9      First, Plaintiffs fail to allege that PK Properties had any duty to disclose the facts underlying

10 Mr. Heisner's plea agreement at the time that they entered into the Stipulated Judgment. *See*

11 *Gayduchik*, 2010 WL 1737109, at *3.

12      Second, Plaintiffs have not plausibly alleged that they took such actions as a result of any

13 alleged concealment. That is, Plaintiffs do not explain how the knowledge of criminal acts—which

14 occurred nearly a year before the trustee's sale of the Property and which were carried out by an

15 individual not plausibly alleged to have tainted the transaction—would have changed their decision to

16 enter into the Stipulated Judgment and make payments thereunder.

17      Third, Plaintiffs allege that if they had known about the facts giving rise to the plea agreement,

18 then they would not have "entered into the Loans." Compl. ¶ 80. This is fanciful. Plaintiffs allege that

19 loan origination occurred in 2008 and involved only Plaintiffs, Bank of America, and PRLAP. *See*

20 Compl. ¶ 11. Plaintiffs have not alleged that PK Properties was involved with the loan origination in

21 any way, or that Plaintiffs anticipated the future foreclosure and purchase of the Property by PK

22 Properties. Accordingly, Plaintiffs cannot plausibly allege that knowledge of the facts underlying Mr.

23 Heisner's plea agreement would have changed their decision to enter into their loan and the DOT.

24      Accordingly the fraud in the concealment claim against PK Properties is DISMISSED with

25 leave to amend.

### I.      RICO

#### 1.      Background law

28 Subsection (c) of 18 U.S.C. § 1962 makes it "unlawful for any person employed by or

United States District Court
Northern District of California

43

associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Further, it is "unlawful for any person to conspire to violate" subsection (c). *Id.* § 1962(d). A plaintiff may seek civil remedies for RICO violations if he has been "injured in his business or property by reason of a violation of section 1962 . . . ." *Id.* § 1964(c).

To sufficiently allege a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

An "enterprise" is an independent legal entity such as a corporation or a "group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 549 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); 18 U.S.C. § 1961(4). "[T]he person named as the defendant cannot also be the entity identified as the enterprise." *Madlaing*, 2013 WL 2403379, at *21 (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir. 1989)). "The 'enterprise is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Odom*, 486 F.3d at 549 (quoting *Turkette*, 452 U.S. at 583).

An "injury" is cognizable under RICO only if the plaintiff can show that injury was proximately caused by the conduct, and that he has suffered a concrete financial loss. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

When the "predicate acts" are alleged to be acts of fraud, the Court must apply the heightened pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). That is, the plaintiff must "state the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentation." *Id.* at 1066 (citation omitted).

### 2.   Application to facts

Two RICO theories can be distilled from the Complaint: (1) a theory involving a "scheme to defraud everyone," which has been raised and dismissed with prejudice in previous cases; and (2) a

theory involving bid-rigging by PK Properties.

### a.   A "scheme to defraud everyone"

As to the first theory, Plaintiffs allege that Defendants concealed the securitization of Plaintiff's loans, "br[ought] suit on behalf of entities that were not the real parties in interest," "conceal[ed] the parties' lack of standing," "draft[ed] . . . fraudulent affidavits and documents," including documents executed by robo-signers, and conveyed foreclosure-related documents using the U.S. Mail and the internet. *See* Compl. ¶¶ 76, 77, 78, 85. Plaintiffs allege that Defendants carried out these acts as part of "a scheme to defraud everyone." *Id.* ¶ 79.

The Court notes that several other courts in this district have recently dismissed with prejudice RICO claims brought by Plaintiffs' counsel and based in a theory nearly identical to the first theory here. *See Zacharias v. JPMorgan Chase Bank, N.A.*, No. 12–06525 SC, 2013 WL 588757, at *3–*4 (N.D. Cal. Feb. 13, 2013) (summarizing RICO allegations that are, with exception of allegations regarding bid-rigging, nearly identical to those in this claim; dismissing claim as "far from plausible" and "simply improper"); *Hoang v. JPMorgan Chase Bank, N.A.*, No. 5:13-cv-00582 EJD, 2013 WL 1436125, at *4–*5 (N.D. Cal. Apr. 9, 2013) (noting that RICO claim was "reminiscent [of], if not identical to" the claim in *Zacharias*); *Quach*, 2013 WL 3788827, at *4 (noting "strikingly similar[ity]" between RICO allegations and those in *Hoang* and *Zacharias*); *Rivac v. Ndex West LLC*, No. C 13-1417 PJH, 2013 WL 3476659, at *8 (N.D. Cal. July 10, 2013) (dismissing with prejudice RICO allegations similar to those in this claim because loan securitization is neither racketeering activity nor illegal, and only alleged damages arose from plaintiffs' conduct in failing to stay current on their loan payments, rather than any action by defendants); *Gilbert*, 2013 WL 2318890, at *10–*11 (detailed analysis of deficiency of RICO allegations similar to those in this claim) (citing dismissal of nearly identical claims in *Elliot v. Mortg. Elec. Registration Sys.*, 12-CV-4370 YGR, 2013 U.S. Dist. LEXIS 61820, at *7–*10 (N.D. Cal. Apr. 25, 2013)); *Madlaing*, 2013 WL 2403379 (detailed analysis of deficiency of RICO allegations similar to those in this claim and admonishing counsel of potential sanctions under Fed. R. Civ. P. 11).

To the extent that the RICO claim relies on the first theory, the Court adopts the reasoning of previous cases and finds that Plaintiffs' claim here is "far from plausible." *See Zacharias*, 2013 WL

588757, at *3. Plaintiffs "put forward no facts supporting [their] 'sweeping contention that Defendants defrauded everyone' by bringing suit on behalf of entities without standing to sue." *See Quach*, 2013 WL 3788827, at *3 (quoting *Zacharias*, 2013 WL 588757, at *3). They fail to allege facts of an ongoing organization to support the contention that Defendants function as an "enterprise." *See Madlaing*, 2013 WL 2403379, at *22. They fail to plausibly allege racketeering activities that are distinct from the alleged enterprise. *See Zacharias*, 2013 WL 588757, at *3. They fail to allege that the loan constitutes an unlawful debt, *i.e.*, an unlawful gambling debt. *See Madlaing*, 2013 WL 2403379, at *23; 18 U.S.C. § 1961(6) (defining "unlawful debt"). They fail to identify authority to support their contention that Defendants had a duty to make disclosures regarding securitization.[30] *See Gilbert*, 2013 WL 2318890, at *10. Moreover, securitization is neither a crime nor racketeering activity. *See Rivac*, 2013 WL 3476659, at *8.

Furthermore, Plaintiffs fail to meet the Rule 9(b) pleading standard because they have not provided any specific allegations identifying which Defendant took which actions, nor have they made any specific allegations about the times, places, and specific content of the activities. For example, Plaintiffs appear to allege that Defendants committed the predicate acts of mail fraud in furtherance of the "enterprise." *See* Compl. at ¶ 79. But they do not "state the time, place, and specific content" of any of the alleged mailings, nor do they state "the identities of the parties to the misrepresentation." *See Edwards*, 356 F.3d at 1066; *Gilbert*, 2013 WL 2318890, at *10.

When asked at the hearing why the Court should not follow the reasoning of previous courts and dismiss the RICO claim to the extent it is based on the first theory, Plaintiffs' counsel provided no substantive response. The Court finds that, as in previous cases, "Plaintiff's attempt to cast a straightforward foreclosure proceeding as a pattern of racketeering activity is simply improper." *Zacharias*, 2013 WL 588757, at *3. Accordingly, the RICO claim based on the first theory is dismissed with prejudice.

### b.    Bid-rigging

This case does depart from previous cases in that it relies on a second theory, which makes

---

[30] In fact, the DOT provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Compl. Ex. A ¶ 20.

United States District Court
Northern District of California

reference to some actual criminal activity, *i.e.*, the bid-rigging activities underlying Mr. Heisner's plea agreement. But the fact of Mr. Heisner's criminal activities, without more, is insufficient to elevate Plaintiffs claim to viability.

### i.        Bank of America, Freddie Mac, and Trustee Corps

Plaintiffs appear to allege that all Defendants have participated in an enterprise to rig bids. *See* Compl. ¶ 77. However, Plaintiffs fail to allege facts indicating that any of the Defendants other than PK Properties even knew about Mr. Heisner's activities or of his affiliation with PK Properties. At the hearing, Plaintiffs' counsel conceded as much. He stated that as to the Defendants other than PK Properties, Plaintiffs did not object to dismissal with prejudice of the RICO claim to the extent it is based on the bid-rigging theory. Accordingly, the RICO claim against Bank of America, Freddie Mac, and Trustee Corps based on the second theory is dismissed with prejudice.

### ii.        PK Properties

The Complaint states that PK Properties participated "in a criminal enterprise to rig bids and purchase properties unlawfully at trustee's sales." *See* Compl. ¶ 77. However, Plaintiffs' do not allege any facts regarding what individuals or entities comprise the enterprise, or how they are "associated together for a common purpose of engaging in a course of conduct." *See Odom*, 486 F.3d at 549. Nor do they allege any facts regarding the existence of an enterprise that is distinct from PK Properties, which, as a defendant, cannot itself be the enterprise. *See Madlaing*, 2013 WL 2403379, at *21.

Furthermore, Plaintiffs have failed to plausibly allege that PK Properties carried out any distinct racketeering activities. *See Odom*, 486 F.3d at 549. To the extent that the Complaint can be construed as alleging that PK Properties committed mail fraud in furtherance of a bid-rigging enterprise, this fails because it is not pled with any specific actors, dates, locations, or contents, as required by Rule 9(b). *See id.* ¶ 79; *Edwards*, 356 F.3d at 1066. None of the other alleged predicate acts appear to have anything to do with bid-rigging. *See* Compl. ¶ 78.

As discussed in the context of the quiet title claim, Plaintiffs have failed to allege a plausible connection between PK Properties and bid-rigging activities of any kind. *See* Part IV.G.1., *supra*. When the Court asked Plaintiffs' counsel for evidence of PK Properties' involvement in bid-rigging at the hearing, counsel pointed solely to two declarations by Plaintiffs that were filed after the close of

United States District Court
Northern District of California

47

United States District Court
Northern District of California

1    briefing. *See* Dkt. Nos. 67 ("K. Bergman Decl."), 68 ("N. Bergman Decl."). Because these

2    declarations were filed after Defendants' Replies and without leave of the Court, the Court need not

3    consider them. *See* Local Rule 7-3(d) ("[o]nce a reply is filed, no additional memoranda, papers or

4    letters may be filed without prior Court approval"). *See, e.g.*, *Quillinan v. Papavassiliou*, No. C 12–

5    04159 CRB, 2013 WL 428604, at *6 (N.D. Cal. Feb. 1, 2013) (striking plaintiff's "reply" to

6    defendant's reply because it was filed without leave of court in violation of Local Rule 7-3(d)).

7    Regardless, the Court notes that these declarations do not save Plaintiffs' RICO claim.

8           The declarations describe interactions that allegedly occurred on or near the date of the

9    trustee's sale. Mr. Bergman asserts the following: Immediately after the trustee's sale took place, Mr.

10   Heisner went to the Property where the Bergmans were still living. K. Bergman Decl. at 2. Mr.

11   Heisner asked the Bergmans to leave the Property in two, three, or four weeks, in exchange for

12   $2,000, $1,500, or $1,200 respectively. *Id.* After some discussion at the Property and during a

13   subsequent phone conversation, Mr. Bergman and Mr. Heisner agreed that the Bergmans would stay

14   for three weeks and leave their big-screen television and Blu-ray, in exchange for $3,000. *Id.* The

15   declaration states that "Heisner's brother Kenneth LaBombar [sic] was with him."[31] *Id.* The next

16   evening, Mr. LaBombard went to the Property "to receive a check for half the amount and a

17   contract."[32] *Id.* Mr. LaBombard was "shaking and crying . . . . He apologized and said he couldn't

18   work for his brother . . . anymore because he was too cruel." *Id.* He "explained that his brother had

19   been training him on how they worked their whole procedure from finding, scouting, their auction

20   process and kicking people out of the houses. He said that Heisner had him doing things that he knew

21   were 'not right' and he was 'afraid they were going to get caught.'" *Id.* He "said he had done the same

22   procedure for Heisner for at least the last 20 of the houses they had bought . . . ." *Id.* Mr. Bergman

23   states that Mr. LaBombard "had bumps on his back and legs and complained these were from stress."

24   *Id.* at 3. Mr. Bergman has the "impression" that Mr. LaBombard "felt that there were not only moral

25   issues but also legal issues with regard to their actions." *Id.* at 2.

26   _____

27   [31] The declaration refers to this individual as "Kenneth LaBombar." The Court assumes that this is intended to refer to
     Kenneth LaBombard who submitted a declaration in support of PK Properties' Motion to Expunge. Additionally, it is
     unclear from the declaration whether Mr. LaBombard was with Mr. Heisner for the house visit or the telephone call.

28   [32] Given the apparent agreement for the Bergmans to receive money in exchange for vacating the Property, it is unclear
     what check Mr. LaBombard went to collect.

United States District Court
Northern District of California

1    Mrs. Bergman confirms Mr. Bergman's narrative of the events. N. Bergman Decl. at 2. She

2    also asserts that when Mr. Heisner "and his company and associates" won the Property at the trustee's

3    sale, they were unaware of that they were the subject of a federal investigation for bid-rigging. *Id.* She

4    further states that "[t]he procedure was lucrative and there would have been no reason to change it.

5    Couple this with LaBombar [sic] who was 'being trained in his methods' by Heisner, being told to do

6    things he knew were 'wrong' and that 'they could get caught and in trouble for,' add to that the

7    extremity of his emotional distress . . . and it makes sense to us to conclude the bid rigging had

8    continued and involved LaBombar [sic] reluctantly." *Id.* And, without any citations, she states that

9    "[t]he time period covered in the Federal government filing against Heisner lists the valid ending date

10   of potentially illegal activity as the date of the filing of the charges," and that the Property was

11   purchased "during this valid period." *Id.* at 2–3.

12   These declarations are not sufficient to support a plausible allegation that PK Properties

13   participated in a bid-rigging scheme or that the trustee's sale of the Property was tainted by bid-

14   rigging. First, the declarations do not assert any facts suggesting that anyone took any actions related

15   to rigging bids, *i.e.*, conspiring with other bidders to lower the price of properties at public auctions.

16   For example, the declarations do not mention any individuals other than Mr. Heisner and Mr.

17   LaBombard who were apparently working together, not potential adverse bidders. Nor are there any

18   facts to support the notion that the trustee's sale for the Property was irregular. In fact, the bulk of the

19   declarations relates to the process *after* a sale is completed, *i.e.*, asking people to vacate their homes.

20   *See* K. Bergman Decl. at 2.

21   Second, the conclusions and impressions of the Bergmans and Mr. LaBombard regarding the

22   possible illegality of the foreclosure process, as carried out by Mr. Heisner and Mr. LaBombard, are

23   "naked assertions" that are not supported by any facts regarding what aspects of the process were

24   illegal. *See Ashcroft*, 556 U.S. at 678.

25   Likewise, Mrs. Bergman's statement that Mr. LaBombard participated in bid-rigging is

26   speculative and conclusory. For example, she points to the fact that Mr. LaBombard was "being

27   trained in [Heisner's] methods." *See* N. Bergman Decl. at 2. However, there is nothing to indicate that

28   "methods" refers to bid-rigging. Mrs. Bergman also points to Mr. LaBombard's physical and

49

1  emotional stress as evidence of wrongdoing. *See id.* To the extent that it might be relevant, this

2  distress appears to have been related to the process of repeatedly asking individuals and families to

3  leave their homes, rather than bid-rigging. *See* K. Bergman Decl. at 2 (recalling that Mr. LaBombard

4  said that he "had just come from a couple's house in which he had to do the same thing . . . . He said

5  they were crying and even brought him in the house to show him they had no food in their refrigerator

6  and had no place to go . . . [He] said he had done the same procedure . . . for at least the last [twenty]

7  houses . . . . He said ours was the last one he could handle . . . .").

8       Accordingly, the RICO claim against PK Properties based on the bid-rigging theory is

9  dismissed with prejudice.

### c.    Injury

11       Plaintiffs' RICO claim—based on either theory and as against all Defendants—fails for the

12  additional reason that Plaintiffs have failed to plausibly allege that any injury was proximately caused

13  by Defendants' activities. *See Chaset*, 300 F.3d at 1086. As discussed in the context of the wrongful

14  foreclosure claim, Plaintiffs have failed to allege that any damages arose from anything other than

15  Plaintiffs' default. *See* Part IV.D.3., *supra*; *Rivac*, 2013 WL 3476659, at *8 (dismissing similar RICO

16  claim because, *inter alia*, only alleged damages arose from plaintiff's default rather than defendants'

17  actions). Additionally, as discussed above, the typical party injured by a successful instance of bid-

18  rigging is the lender. *See* Part IV.G.2., *supra*. Plaintiffs do not allege any facts to show that they were

19  injured by the allegedly lower price of the Property at the trustee's sale.

### d.    Disposition

21       Plaintiffs' RICO claim relies on legal theories that are fundamentally flawed. Additionally, the

22  lack of factual allegations in the pleadings and the extra-pleading declarations demonstrates that

23  amendment here would be futile. *See Quach*, 2013 WL 3788827, at *3; *Miller*, 845 F.2d at 214.

24  Accordingly, the RICO claim is DISMISSED with prejudice.

### J.    UCL

26       The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or

27  fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A claim may be brought under

28  the UCL "by a person who has suffered injury in fact and has lost money or property as a result of

United States District Court
Northern District of California

unfair competition." Cal. Bus. & Prof. Code § 17204. Therefore, to establish standing under the UCL a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." *Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011)) (emphasis in original).

For the same reasons set forth pertaining to the wrongful foreclosure cause of action, Plaintiffs have not alleged an economic injury caused by any of Moving Defendants' challenged practices. *See* Part IV.D. 3., *supra*. Accordingly, Plaintiffs' UCL claim is DISMISSED with leave to amend.

## V.   ANALYSIS OF MOTION TO EXPUNGE

In matters pertaining to notices of *lis pendens*, federal courts look to state law. *DeLeon v. Wells Fargo Bank, N.A.*, 10-CV-01390-LHK, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011) (citing 28 U.S.C. § 1964). California statute explains the standard for expunging a notice of *lis pendens*: "[T]he court shall order that the notice [of *lis pendens*] be expunged if the court finds that the claimant has not established by a preponderance of the evidence the *probable validity* of the real property claim." Cal. Civ. Proc. Code § 405.32 (emphasis added). "Probable validity" means that "it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." *Orange County v. Hongkong & Shanghai Banking Corp. Ltd.*, 52 F.3d 821, 824 (9th Cir. 1995) (quoting Cal. Civ. Proc. Code § 405.3). This standard "expressly concerns factual merit." *Kirkeby v. Superior Court of Orange Cnty.*, 33 Cal. 4th 642, 651 (2004) (quoting Cal. Civ. Proc. Code § 405.32, Editors' Notes, cmt. 3 (West Ann. Code)). This standard is more rigorous than the standard for a Rule 12(b)(6) review, which merely evaluates the sufficiency of the pleadings. *See* Cal. Civ. Proc. Code § 405.32, Editors' Notes, cmt. 3 (West Ann. Code) (explaining that "demurrer-like review" is preserved in section 405.31—the standard for ordering expungement where claimant fails to state any real property claim at all—and distinguishing this from section 405.32 standard of "probable validity").

Here, because the Court has granted Defendants' Motions to Dismiss and dismissed the Complaint in its entirety, Plaintiffs are left without any claims, real property or otherwise. Because Plaintiffs have failed to properly allege any claims, it follows that they have also failed to demonstrate

United States District Court
Northern District of California

1  the "probable validity" of such claims. *See DeLeon*, 2011 WL 311376, at 11 (granting motion to

2  expunge lis pendens where court dismissed defendants' motion to dismiss with prejudice).

3  Accordingly, the Court GRANTS the Motion to Expunge.

4  PK Properties also seeks an award of reasonable attorneys' fees and costs for preparing its

5  Motion to Expunge. The Court is required to award attorneys' fees to a prevailing party unless the

6  other party acted with "substantial justification" or other circumstances that make the imposition of

7  fees unjust. Cal. Civ. Proc. Code § 405.38. Here, it would have been preferable for Plaintiffs to

8  withdraw their notice of *lis pendens*, particularly after they were ordered to do so by the state court.

9  *See* Hobin Decl. Ex. 2. However, the Court does not find that the Plaintiffs' claims are frivolous, and

10 the Court notes that Plaintiffs lost their home this year and are likely experiencing financial

11 difficulties. Accordingly, the Court finds that an award of attorneys' fees would be unjust, and PK

12 Properties' request for fees and costs is DENIED.

**VI.     CONCLUSION**

13

14 For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED and the Complaint

15 is DISMISSED as follows: (1), (2) the breach of contract claim is dismissed with prejudice; (3) the

16 slander of title claim is dismissed with leave to amend; (4) the wrongful foreclosure claim is

17 dismissed with leave to amend; (5) the section 2923.5 claim is dismissed with prejudice; (6) the TILA

18 claim is dismissed with prejudice; (7) the quiet title claim is dismissed with leave to amend; (8) the

19 fraud in the concealment claim is dismissed with leave to amend; (9) the RICO claim is dismissed

20 with prejudice; (10) the UCL claim is dismissed with leave to amend. PK Properties' Motion to

21 Expunge is GRANTED.

22 Plaintiffs may file an amended complaint within thirty days of the date of this Order.

23 IT IS SO ORDERED.

24 Dated: October 23, 2013

25

26 JOSEPH C. SPERO
United States Magistrate Judge

27

28

52