United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KURT BERGMAN, et al.,

          Plaintiffs,

    v.

BANK OF AMERICA, N.A., et al.,

          Defendants.

Case No.  13-cv-00741-JCS

**ORDER GRANTING BANK OF AMERICA, N.A. AND FEDERAL HOME LOAN MORTGAGE CORPORATION'S MOTION TO DISMISS; GRANTING TRUSTEE CORPS' MOTION TO DISMISS; GRANTING PK PROPERTIES, LLC'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITH PREJUDICE**

Re: Dkt. Nos. 75, 78, 81

## I.     INTRODUCTION

Plaintiffs Kurt and Nancy Bergman ("Plaintiffs") brought suit for wrongful foreclosure and related claims against Defendants Bank of America, N.A. ("Bank of America"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), Trustee Corps, and PK Properties, LLC ("PK Properties") (collectively, "Defendants").[1] Defendants moved to dismiss Plaintiffs' complaint. *See* Dkt. Nos. 6, 8, 54. On October 23, 2013, the Court granted Defendants' motions and dismissed the complaint with leave to amend certain claims. *See* Dkt. No. 71; *Bergman v. Bank of Am.*, C-13-00741 JCS, 2013 WL 5863057 (N.D. Cal. Oct. 23, 2013). Plaintiffs filed their First Amended Complaint ("FAC") on November 22, 2013. Presently before the Court are three motions to dismiss the FAC by (1) Bank of America and Freddie Mac; (2) Trustee Corps; and (3) PK Properties (collectively, "Motions"). Trustee Corps has joined Bank of America and Freddie

---

[1] Trustee Corps refers to itself in the pleadings as "MTC Financial Inc. dba Trustee Corps."

1    Mac's Motion.[2] *See* Dkt. No. 80. All parties have consented to the jurisdiction of a United States

2    Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court finds the matter suitable for decision

3    without oral argument. *See* N.D. Cal. Civ. L. R. 7-1(b). The hearing scheduled for January 24,

4    2014 at 9:30 a.m. is VACATED. For the reasons stated below, the Motions are GRANTED, and

5    the FAC is DISMISSED with prejudice.

6    **II.    BACKGROUND**

7         The facts of this case are set out in the Court's order dismissing Plaintiffs' original

8    complaint, and they are not repeated in detail here. *See Bergman*, 2013 WL 5863057, at \*1–\*4.

9    The key facts are summarized below:

10        On December 5, 2008, Plaintiffs entered into a Deed of Trust ("DOT") with Bank of

11   America—identified as the beneficiary—and PRLAP, Inc. ("PRLAP")—identified as the

12   trustee—to secure a loan of $291,000 in connection with the refinance of a single-family home in

13   Contra Costa County, California ("Property"). *See* FAC ¶ 11.

14        Plaintiffs allege that, shortly after recording the DOT, Bank of America sold its beneficial

15   interest in the DOT to a securitized trust, a Freddie Mac Real Estate Mortgage Investment Conduit

16   ("Securitized Trust"). *Id.* ¶ 12 (citing *id.* Ex. B at 18, 16, 19). Plaintiffs further allege that this sale

17   was imperfect because the DOT was never formally assigned from Bank of America to the

18   Securitized Trust as it should have been, pursuant to the Securitized Trust's Pooling and Servicing

19   Agreement ("PSA").[3] *Id.* ¶ 25. Defendants neither confirm nor deny these allegations regarding

20   the sale of the DOT.

21        On July 28, 2011, Trustee Corps recorded a Notice of Default and Election to Sell Under

22   Deed of Trust ("NOD"). Defs. Bank of America and Freddie Mac's Req. for Judicial Notice in

23   Supp. of Mot. to Dismiss ("BOA RJN"), Ex. B. On October 17, 2011, Trustee Corps recorded a

United States District Court
Northern District of California

---

25   [2] Plaintiffs request that the Court "overrule" Trustee Corps' joinder of Bank of America and Freddie Mac's Motion or,
26   in the alternative, that the Court "sustain" the joinder and grant Plaintiffs leave to amend. Pls.' Opp'n to Def. Trustee
     Corps' Motion to Dismiss at 18–19. Plaintiffs present no rationale for their request and the Court can think of none. If
     Plaintiffs wish to amend their FAC, they may file a motion to seek leave from the Court to do so. *See* Fed. R. Civ. P.
27   15(a)(2).

28   [3] The Court has not received a copy of the PSA. Plaintiffs do not have a copy. *See* Pls.' Opp'n to Defs. Bank of
     America and Freddie Mac's Mot. to Dismiss at 6.

United States District Court
Northern District of California

1   Substitution of Trustee ("SOT"), dated August 10, 2011, which replaced PRLAP with Trustee

2   Corps. *Id.* Ex. C. On November 2, 2011, Trustee Corps recorded a Notice of Trustee's Sale

3   ("NOTS"). *Id.* Ex. D. On or around November 15, 2011, Plaintiffs received notice that they might

4   be eligible for a Home Affordable Modification Program ("HAMP") modification approval.[4] *See*

5   FAC ¶ 16, Ex. B.

6          On December 5, 2011, Trustee Corps conducted a trustee's sale of the Property. *See id.*

7   ¶ 16. At the trustee's sale, Kenneth LaBombard, an employee of Heisner & Associates, Inc.

8   ("Heisner & Associates"), purchased the Property for the asking price of $177,598.81. Decl. of

9   Kenneth LaBombard in Supp. of Def. PK Properties' Mot. to Expunge Lis Pendens ¶ 4 (Dkt. No.

10  58-7). On December 27, 2013, Trustee Corps recorded a Trustee's Deed Upon Sale ("Trustee's

11  Deed") identifying PK Properties as the owner of the Property. BOA RJN Ex. E.

12         On March 14, 2012, Barry Heisner—the owner of Heisner & Associates and brother-in-

13  law of PK Properties' sole owner and member, Pennie Weber—pled guilty to conspiracy to rig

14  bids for the purpose of obtaining properties offered at public real estate foreclosure auctions in

15  Contra Costa County from the time period of approximately August 2008 to January 2011. *See*

16  FAC Ex. D.

17  **III.    JUDICIAL NOTICE**

18         A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute,"

19  either because it is "generally known within the territorial jurisdiction of the trial court" or it is

20  "capable of accurate and ready determination by resort to sources whose accuracy cannot

21  reasonably be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any

22  material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian*

23  *Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668,

24  688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the

25  complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is

26

27  [4] Plaintiffs allege that they "received a . . . HAMP loan modification approval" and that Bank of America "ignored" this approval. FAC ¶ 16. However, the evidence that is cited in support of this proposition indicates only that Plaintiffs

28  "may pass a HAMP [Net Present Value] evaluation and . . . may be eligible for a HAMP modification." *Id.* Ex. B. Plaintiffs do not allege any other facts regarding the purported loan modification approval.

United States District Court
Northern District of California

1    central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Id*. at 999

2    (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). In addition, the court may take

3    judicial notice of "matters of public record," but not facts that may be "subject to reasonable

4    dispute." *Id*. (citing *Lee*, 250 F.3d at 689).

5    Bank of America, Freddie Mac, and Trustee Corps request judicial notice of five publicly

6    recorded documents: the DOT, NOD, SOT, NOTS, and Trustee's Deed. *See* BOA RJN; Def.

7    Trustee Corps' Req. for Judicial Notice in Supp. of Mot. to Dismiss ("Trustee RJN"). Bank of

8    America and Freddie Mac also seek judicial notice of exhibits regarding the procedural history of

9    Plaintiffs' action filed against Bank of America in California state court in December 2011. *See*

10   BOA RJN. Trustee Corps seeks judicial notice of the Court's October 23, 2013 order dismissing

11   the original complaint. *See* Trustee RJN.

12   For the reasons stated in the Court's previous order dismissing the complaint, the Court

13   takes judicial notice of the recorded documents as to the fact of their existence and recordation.

14   *Bergman*, 2013 WL 5863057, at *13–*14. However, the Court declines to infer from the recorded

15   documents that Bank of America remained the beneficiary under the DOT at the time each

16   document was recorded. *See id.* The Court also takes judicial notice of the California state court

17   documents as public records but does not rely on any facts therein to resolve the Motions. *See id.*

18   **IV.    LEGAL STANDARD**

19   A complaint may be dismissed for failure to state a claim upon which relief can be granted

20   under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The

21   purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

22   complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a

23   plaintiff's burden at the pleading stage is relatively light. Rule 8(a) states that "[a] pleading which

24   sets forth a claim for relief must contain . . . a short and plain statement of the claim showing that

25   the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

26   In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and

27   takes "all allegations of material fact as true and construe[s] them in the light most favorable to

28   the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

4

1   Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

2   would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

3   1990). A complaint must "contain either direct or inferential allegations respecting all the

4   material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp.*

5   *v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d

6   1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic

7   recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

8   (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

9   assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

10  The factual allegations must be definite enough to "raise a right to relief above the speculative

11  level." *Twombly*, 550 U.S. at 555.

12        However, a complaint does not need detailed factual allegations to survive dismissal. *Id.*

13  Rather, a complaint need only include enough facts to state a claim that is "plausible on its face."

14  *Id.* at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not

15  merely consistent with)" a right to relief. *Id.* at 545 (noting that this requirement is consistent

16  with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is

17  entitled to relief").

18        The Court may deny leave to amend where amendment would be futile or if the claim is

19  legally insufficient. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

20  **V.**    **ANALYSIS**

21        **A.**    **Breach of Contract and Truth in Lending Act**

22        As a preliminary matter, Plaintiffs raise several claims in their FAC that have already been

23  dismissed by this Court with prejudice: breach of express contracts, breach of implied contracts,

24  and violation of the Truth in Lending Act ("TILA"). *See Bergman*, 2013 WL 5863057, at *15–

25  *17, *24–*25. While Plaintiffs include a few new paragraphs in each of these sections of the FAC,

26  they largely restate their original complaint and they do not present any new facts, nor do they

27  provide any reasons that the Court should revisit its earlier rulings. Thus, the Court declines to

28  revisit these claims here. *See id.* Nonetheless, the Court notes that these claims would be

United States District Court
Northern District of California

1    dismissed with prejudice for the reasons stated in the Court's previous order, as well as the reasons

2    stated below.

3    As to the claim that Defendants breached the PSA, Plaintiffs newly argue that the Court

4    should follow *Glaski v. Bank of Am., Nat'l Ass'n*, 218 Cal. App. 4th 1079, 1083 (2013), which

5    held that the transfer of a deed of trust to a securitized trust after the closing date required by a

6    pooling and service agreement could render the deed of trust void. *See* FAC ¶¶ 25–26. However,

7    as Defendants point out, *Glaski* represents a minority view. *See Apostol v. CitiMortgage, Inc.*, 13-

8    CV-01983-WHO, 2013 WL 6328256, at *6 (N.D. Cal. Nov. 21, 2013) (noting that "courts in this

9    District have expressly rejected *Glaski*) (citing cases). The Court would decline to follow *Glaski*

10   here. Additionally, in the section of their FAC regarding TILA, Plaintiffs allege the existence of an

11   indemnification agreement in the PSA that would "inculpate Trustee Corps for breaches of the

12   PSA including the faulty assignment which also violated TILA." FAC ¶ 72. The Court declines to

13   address this poorly articulated claim because, in any event, the Court's original basis for

14   dismissing the PSA claims still stands: Plaintiffs do not allege—and cannot allege—that they are

15   parties to the PSA and, thus, they lack standing to enforce it. *See Bergman*, 2013 WL 5863057, at

16   *16–*17.

17   As to the claim that Defendants breached the DOT, Plaintiffs include a new paragraph

18   advancing a robo-signing argument. *See* FAC ¶ 27. The Court already rejected a substantively

19   similar robo-signing argument in connection with the breach of contract claims. *See Bergman*,

20   2013 WL 5863057, at *15. Additionally, in the section of their FAC regarding slander of title,

21   Plaintiffs appear to allege a breach of the DOT based on the recording of the SOT, and to allege

22   that this is a separate claim from one challenging securitization. *See* FAC ¶¶ 48–51. The Court

23   declines to address these poorly articulated arguments because, in any event, the claims for breach

24   of the DOT would still fail because of Plaintiffs' failure to plausibly allege damages. *See*

25   *Bergman*, 2013 WL 5863057, at *16. That is, Plaintiffs have not plausibly alleged that any

26   damages were not caused by their own default. *See id.*

27   As to the claim that Defendants violated TILA, Plaintiffs newly allege that Defendants

28   violated 15 U.S.C. § 1641(g), which requires that within 30 days of the date a mortgage loan is

United States District Court
Northern District of California

6

1    sold or assigned to a third party, the new owner or assignee must provide written notice of the

2    transfer to the borrower. *See* FAC ¶¶ 70–71. They allege that Bank of America violated this

3    provision by failing to timely provide notice to Plaintiffs after transferring the loan to Freddie

4    Mac. *Id.* ¶ 70. They also allege that Trustee Corps violated this provision because it is a "party in

5    privity to the PSA under the law of agency and liable under the indemnification provision of the

6    [Securitized Trust]." *Id.* ¶ 71. As a preliminary matter, Plaintiffs' misread the statute in two

7    respects. First, section 1641(g) requires the *new* owner—here, allegedly Freddie Mac, not Bank of

8    America—to provide notice. Second, section 1641(g) applies only to "creditors" and, as Trustee

9    Corps correctly points out, Plaintiffs have not pled that Trustee Corps is a "creditor." *See* Def.

10   Trustee Corps' Mot. to Dismiss at 17–18.

11        Even if Plaintiffs cured these defects, the section 1641(g) claim fails fatally because of

12   TILA's one-year statute of limitations. *See* 15 U.S.C. § 1640(e). As the Court has previously

13   explained, "[u]nder the discovery rule, the limitations period does not begin to run until the

14   plaintiff discovers, or reasonably should discover, that she has been injured." *Bergman*, 2013 WL

15   5863057, at *24 (citing *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th

16   Cir. 2008)). "[A] statute of limitations may be equitably tolled if 'despite all due diligence, a

17   plaintiff is unable to obtain vital information bearing on the existence of his claim.'" *Bergman*,

18   2013 WL 5863057, at *24 (quoting *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir.

19   2000)).

20        Here, the limitations period for any claim under section 1641(g) began running, at the

21   latest, by November 15, 2011. This is the date of the HAMP notice of possible approval, which

22   Plaintiffs proffer as their only evidence that Bank of America sold the loan to Freddie Mac—the

23   transfer that is at the heart of their section 1641(g) claim. *See* FAC ¶¶ 17, 25, Ex. B. Plaintiffs' suit

24   was not filed until over one year later on February 20, 2013, and the FAC was not filed until over

25   two years later, November 22, 2013. *See* Dkt. Nos. 1, 74. Accordingly, the section 1641(g) claim,

26   like the other improperly reiterated TILA claims, fails.

27        Plaintiffs' remaining claims are: (1) slander of title; (2) wrongful foreclosure; (3) quiet

28   title; (4) fraud in the concealment, and (4) California's Unfair Competition Law (Cal. Bus. & Prof.

United States District Court
Northern District of California

7

1    Code § 17200 *et seq.*). Each of Plaintiffs' claims fails for the reasons discussed below.[5]

2        **B.     Slander of Title**

3        Slander of title "occurs when a person, without privilege to do so, publishes a false

4    statement that disparages title to property and causes pecuniary loss." *Truck Ins. Exchange v.*

5    *Bennett*, 53 Cal. App. 4th 75, 85 (1997). The required elements of a claim for slander of title are

6    "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss."

7    *Sumner Hill Homeowners' Ass'n Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030

8    (2012). "Direct pecuniary loss" is restricted to:

9        (a) the pecuniary loss that results directly and immediately from the effect of the conduct
10       of third persons, including impairment of vendibility or value caused by disparagement,
         and (b) the expense of measures reasonably necessary to counteract the publication,
11       including litigation to remove the doubt cast upon vendibility or value by disparagement.

12   *Ryan v. Editions Ltd. W., Inc.*, No. C–06–4812–PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec.

13   27, 2007) (quoting *Appel v. Burman*, 159 Cal. App. 3d 1209, 1215 (1984); Rest. 3d Torts § 633).

14       Plaintiffs allege that slander of title occurred when Defendants published the SOT, NOTS,

15   and Trustee's Deed by recording them in the county records. FAC ¶ 47. They allege that these

16   documents were false because Bank of America did not have any beneficial interest in the DOT

17   when executing the SOT, rendering the substitution of Trustee Corps invalid—as a result, Trustee

18   Corps's execution of the NOTS and Trustee's Deed were also invalid. *Id.* ¶ 43, 46. They allege

19   that such recordings were done "with malice and a reckless disregard for the truth." *Id.* ¶ 47. They

20   allege that they suffered pecuniary harm as a result of impaired vendibility of their property and

21   the need to hire attorneys "to cancel the instrument casting doubt on" the Property. *Id.* ¶¶ 52, 53,

22   54. They also newly allege in the FAC that they suffered pecuniary harm because "[f]rom 2008

23   through July 28, 2011 . . . [Bank of America] and Freddie Mac continued wrongfully to send

24

25   [5] The Court notes that Plaintiffs also present arguments in their oppositions regarding claims for violation of section
     2923.5 of the California Civil Code and the federal Racketeer Influenced and Corrupt Organizations Act. *See, e.g.*,
26   Pls.' Opp'n to Defs. Bank of America and Freddie Mac's Mot. to Dismiss at 7–9, 13–14. This is astounding. Not only
     did Plaintiffs fail to include these claims in the FAC, but the Court has already dismissed these claims with prejudice.
27   *See Bergman*, 2013 WL 5863057, at *23–*24, *31–*32. Plaintiffs also mention in their oppositions claims under the
     Fair Debt Collection Practices Act, which were not raised in the FAC and which the Court declines to address. *See*
28   Opp'n to BOA Mot. at 8–9. Nonetheless, the Court notes that these claims would fail for failure to allege specific facts
     to support their allegations, including the failure to adequately allege that Defendants acted as "debt collectors."

*United States District Court*
*Northern District of California*

1    monthly bills to the Mortgagors, which bills the Mortgagors paid . . . Plaintiffs' account with the

2    true beneficial interest holder was never credited for these payments." *Id.* ¶ 52.

3           Bank of America, Freddie Mac, and Trustee Corps disagree with Plaintiffs' theory of Bank

4    of America's lack of authority, and they argue that Plaintiffs failed to adequately plead falsity. *See*

5    Defs. Bank of America and Freddie Mac's Mot. to Dismiss at 16–17 ("BOA Mot."); Def. Trustee

6    Corps Mot. to Dismiss at 16 ("Trustee Mot."). Additionally, Defendants argue that Plaintiffs have

7    not sufficiently pled malice to overcome privilege afforded by the California Civil Code. *See* BOA

8    Mot. at 17; Trustee Mot. at 16. PK Properties argues that Plaintiffs have failed to plead any facts

9    showing that PK Properties had anything to do with recording the documents. *See* Def. PK

10   Properties' Mot. to Dismiss at 6–7 ("PK Mot."). Plaintiffs do not present any meaningful new

11   arguments or facts in their oppositions.

12          The Court agrees with some of Defendants' arguments. As to Bank of America, the Court

13   finds that Plaintiffs have properly pled the first three elements of the slander of title claim for the

14   same reasons stated in the order dismissing the original complaint. *See Bergman*, 2013 WL

15   5863057, at *17–*18. However, Plaintiffs still fail to plead the fourth element of pecuniary harm.

16   First, the Court rejects arguments regarding pecuniary harm based in impaired vendibility and

17   attorney's fees for the same reasons stated in its previous order. *See id.* at *18–*19. Second, the

18   only remaining argument is that Plaintiffs made payments that were "never credited" to their

19   "account with the true beneficial interest holder." *See* FAC ¶¶ 52. This allegation is inadequately

20   pled because it is vague and entirely unsubstantiated. Plaintiffs have alleged no specific facts

21   regarding such bills or payments, nor have they alleged any specific facts that their account was

22   "never credited." Moreover, even if the account "with the true beneficial interest holder" was

23   never credited, Plaintiffs fail to allege that the amounts they paid were never credited to another

24   account in their names or to their outstanding loan balance. Plaintiffs present no argument as to

25   how they could have suffered actual injury if the payments were in fact credited against their loan

26   balance.

27          Finally, and fatally, Plaintiffs present no argument as to why any pecuniary harm was not

28   caused by their own default. *See Bergman*, 2013 WL 5863057, at *15. The lack of a credit to their

United States District Court
Northern District of California

1    account with the mortgage holder, even if true, is not pecuniary harm resulting from the alleged

2    slander of title. Plaintiffs do not contest that they were in default. Plaintiffs do not contest that

3    their default was the result of their failure to timely make all loan payments. Accordingly, even if

4    some of the payments they did make were not properly credited, Plaintiffs do not maintain that

5    proper allocation of these payments would have resulted in their mortgage being current. It was

6    Plaintiffs' own conduct that caused the default, and any resulting pecuniary injury. Accordingly,

7    the slander of title claim against Bank of America is DISMISSED without leave to amend.

8           As to the other Defendants, the FAC does not present any meaningful new arguments or

9    facts relevant to the slander of title claim.[6] Accordingly, for the reasons explained in the Court's

10   previous order, the slander of title claim is DISMISSED without leave to amend as to (1) Freddie

11   Mac for failure to allege that it had any role in the execution or recordation of the documents; (2)

12   Trustee Corps for failure to plausibly allege the absence of privilege pursuant to the California

13   Civil Code; and (3) PK Properties for failure to allege that it had any role in the execution or

14   recordation of the documents. *See Bergman*, 2013 WL 5863057, at *19–*20.

15          **C.      Wrongful Foreclosure**

16          The elements of a claim for wrongful foreclosure are: "(1) the trustee or mortgagee caused

17   an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a

18   mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or

19   mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges

20   the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused

21   from tendering." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011). As to the element of

22   prejudice, courts have found that where the foreclosure sale has already occurred, "there is no

23   longer a 'threat' of foreclosure" and, without any allegations that the foreclosure sale would not

24   have occurred, a plaintiff fails to properly allege prejudice. *Albano v. Wells Fargo Bank, N.A.*, No.

25   4:12-cv-4018 KAW, 2012 WL 5389922, at *7 (N.D. Cal Nov. 5, 2012).

26

27   _____

28   [6] In the section of their FAC regarding slander of title, Plaintiffs also present arguments regarding breach of the PSA, breach of the DOT, and robo-signing. FAC ¶¶ 48–51. However, the Court rejects these arguments for the reasons that it rejects substantially similar claims in the breach of contract context. *See* Part V.A., *supra*.

United States District Court
Northern District of California

1      Generally, the tender rule applies such that "an action to set aside a trustee's sale for

2   irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount

3   of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App.

4   3d 575, 578 (1984). While the tender rule is generally not applicable to cases seeking to prevent a

5   pending sale, it is applicable to cases where the sale has already been completed. *See Barrionuevo*

6   *v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 970–971 (N.D. Cal. 2012); *Lester v. J.P. Morgan*

7   *Chase Bank*, No. C 12-05491 LB, 2013 WL 633333, at *8 (N.D. Cal. Feb. 20, 2013); *Giannini v.*

8   *Am. Home Mortg. Servs., Inc.*, C11-04489 TEH, 2012 WL 298254, at *3 (N.D. Cal. Feb. 1, 2012).

9      The wrongful foreclosure claim presented in the FAC is substantively similar to Plaintiffs'

10  wrongful foreclosure claim in its original complaint. Bank of America, Freddie Mac, and Trustee

11  Corps argue that the claim must be dismissed because of the tender rule, the inability of plaintiffs

12  to challenge securitization, and the adequacy of the foreclosure process as carried out. *See* BOA

13  Mot. at 17–18; Trustee Mot. at 13–16. PK Properties argues that Plaintiffs have not alleged that it

14  had anything to do with the foreclosure process. PK Mot. at 7.

15     The Court adheres to its previous reasons for dismissing the claim. First, Plaintiffs have

16  failed to allege prejudice because they have not plausibly alleged that they did not default or that

17  they would not have been foreclosed upon anyway. *See Bergman*, 2013 WL 5863057, at *23.

18  Second, the Property is the subject of an already completed sale to which the tender rule applies,

19  and Plaintiffs have failed to offer tender. *See id.*

20     Plaintiffs do proffer new evidence that Bank of America sold the loan to Freddie Mac. *See*

21  FAC Ex. E. However, it comes in a form that is not any more convincing than the evidence

22  submitted with the original complaint. *Compare id. with* FAC Ex. B at 5–6, 11, 13–15, 16–18

23  (same as exhibit submitted with original complaint). This new evidence is a document that appears

24  to be a printout from the government website www.makinghomeaffordable.gov, titled "NPV

25  Evaluation Results," which states "your mortgage may pass a HAMP [Net Present Value]

26  evaluation and you may be eligible for a HAMP modification." FAC Ex. E. Plaintiffs correctly

27  point out that the document lists Freddie Mac as the "Investor" of the loan. *Id.* However, the

28  printout contains no personally identifying information, so it is not clear whether this document

United States District Court
Northern District of California

11

1    even pertains to Plaintiffs' loan or the Property. Assuming that it does, it does not change the

2    Court's analysis, which is based on the application of the tender rule and the failure to allege

3    prejudice, rather than the authority of Bank of America to foreclose. The Court's reasoning for

4    dismissing the wrongful foreclosure claim turns on a crucial, immutable fact that is unchanged by

5    the new evidence: the foreclosure has already occurred.

6           Accordingly, the wrongful foreclosure claim against all Defendants is DISMISSED

7    without leave to amend.

8           **D.    Quiet Title**

9           Plaintiffs seek to quiet title to the Property against all Defendants.[7] Plaintiffs' legal theory

10   is unchanged from the original complaint. *See* FAC ¶ 84. Plaintiffs again assert the following

11   faulty chain of causation: In March 2012, Mr. Heisner, "principal" of PK Properties, pled guilty to

12   crimes related to bid-rigging, which took place from approximately August 2008 to January 2011.

13   This means that the December 2011 trustee's sale where PK Properties purchased the Property

14   was illegal and the Trustee's Deed is invalid, and PK Properties is not the rightful owner of the

15   Property. *See id.* PK Properties argues that Plaintiffs have failed to adequately allege a connection

16   between Mr. Heisner's bid-rigging activities and the trustee's sale of the Property. *See* PK Mot. at

17   7–8. The other Defendants argue that this claim was not pled against them. *See* BOA Mot. at 22–

18   23; Def. Trustee Corps' Reply to Opp'n at 8–9 ("Trustee Reply").

19          The Court agrees with Defendants. As the Court has previously explained, this theory fails

20   because the plea agreement concerns a time period that ended nearly a year before the trustee's

21   sale, and there is no evidence to connect Mr. Heisner's illegal activities to the trustee's sale at

22   issue. *See Bergman*, 2013 WL 5863057, at *26. The fact that Mr. Heisner is the brother-in-law of

23   the owner and sole member of PK Properties does not provide sufficient evidence of illegality at

24   the trustee's sale. *See id.*

25          In the FAC, Plaintiffs make allegations about their interactions with Mr. Heisner and Mr.

26

27   _____

28   [7] Although the heading for the quiet title claim indicates that it is brought against only PK Properties and Does 1–100, Plaintiffs allege in the text of the FAC that "Defendants, and each of them" are liable for this cause of action.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    LaBombard around the time of the trustee's sale, which they had previously submitted to the

2    Court as declarations in the context of the motions to dismiss the original complaint. FAC ¶¶ 84–

3    87. These allegations do not save the quiet title claim.[8] As the Court explained in the order

4    dismissing the original complaint, these allegations do not give rise to a plausible claim that Mr.

5    Heisner's bid-rigging activities had anything to do with the trustee's sale of the Property. *See*

6    *Bergman*, 2013 WL 5863057, at \*31–\*32. The allegations do not include any facts or statements

7    that give rise to the inference that anyone took any actions related to bid-rigging, *i.e.*, conspiring

8    with other bidders to lower the price of properties at public auctions. Mr. LaBombard's alleged

9    statements regarding the potential illegality of his and Mr. Heisner's actions do not reference bid-

10   rigging. Further, Mr. LaBombard's physical and emotional distress—apparently the result of his

11   discomfort with his work purchasing foreclosed properties and asking people to leave their

12   homes—is also not sufficient to properly allege a connection between bid-rigging and the trustee's

13   sale of the Property. *See id.*

14          In their oppositions, Plaintiffs allege a new theory of PK Properties' illegal behavior.

15   Specifically, Plaintiffs allege that PK Properties was formed in September 2008, "during the time

16   the bid rigging activities" that were the subject of the plea agreement took place. *See* Pls.' Opp'n

17   to BOA Mot. at 11. They allege that

18          Mr. Heisner created PK Properties, LLC, retained possession and control of the proceeds,
            and directed the activities of PK Properties, LLC, but that PK Properties, LLC derived a
19          secret profit of equity in the Subject Property as a result of its agreement with other buyers,
            including Barry Heisner and Heisner and Associates, Inc. that PK Properties, LLC would
20          be the only bidder on the Subject Property, and that in consideration, PK Properties, LLC
            would not bid on certain other properties.
21

22   *Id.* Plaintiffs allege that the Property was sold for $177,598 at the trustee's sale but that the

23   estimated bid was $313,836, according to the website www.foreclosureradar.com. *Id.* Plaintiffs

24          believe that PK Properties, LLC was not a good faith purchaser of the Subject Property
            making a smart buy, getting a good deal by purchasing a distressed property, but that PK
25          Properties, LLC illegally and secretly profited from bid-rigging due to the familial
            relationship of the parties, the proximity in time between the creation of PK Properties,
26

27   ———————————

28   [8] Nor did they save Plaintiffs' RICO claim, which the Court dismissed with prejudice. *See Bergman*, 2013 WL
     5863057, at \*31–\*32.

1

2

3

> LLC and the actions complained of in [the case giving rise to the plea agreement] . . .
> Plaintiffs are informed and believe Mr. Heisner was motivated to create PK Properties,
> LLC to continue the bid-rigging in the name of a shell company so that his wife and
> brother and his lifestyle could be perpetuated during his pending incarceration and as part
> of a shell enterprise and despite any restitution required by his [plea agreement].

4
*Id.* at 12.

5

6

7

These naked assertions—which the Court need not consider because they were not asserted in the FAC—are not sufficient to save Plaintiffs' quiet title claim. These assertions are not supported by any plausible factual allegations, and they amount to nothing more than speculation.

8

9

10

First, the fact that PK Properties was formed at some point during the time period covered by the plea agreement is insufficient to give rise to an inference of improper purpose. Second, Plaintiffs assert no factual basis for the allegation that Mr. Heisner "directed the activities" of PK Properties;

11

12

again, the fact that he is the brother-in-law of PK Properties' owner and sole member is insufficient. Third, Plaintiffs assert no factual basis for the allegation that Mr. Heisner had an

13

14

15

agreement with other buyers, Heisner & Associates, or PK Properties. Fourth, Plaintiffs assert no factual basis or actual evidence regarding the alleged depressed bid price for the Property. Their citation to a website for an "estimated bid" does not indicate that any bid-rigging occurred.

16

17

18

Moreover, Plaintiffs are essentially making a claim that the deed is void because the trustee's sale was fraudulent. However, they do not meet the federal pleading standard for fraud, which requires particularity. While Plaintiffs appear to allege that Mr. Heisner was involved in an

19

20

improper agreement with PK Properties, Heisner & Associates, and other unnamed buyers, Plaintiffs do not allege that any particular people other than Mr. Heisner were part of this

21

22

agreement, or that they made any particular representations or omissions. *See* Fed. R. Civ. P. 9(b). *See also Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991) (in

23

24

California, when alleging fraud against a corporation, plaintiff must allege names of people who committed fraud).

25

26

Plaintiffs' lack of particularity is made even more apparent by an abundance of inconsistency. As PK Properties correctly points out, Plaintiffs illogically allege that Mr. Heisner

27

28

made an agreement to rig bids with Heisner & Associates, PK Properties, unnamed buyers, and *himself*. *See* Opp'n at 11; Def. PK Properties' Reply to Opp'n at 3 ("PK Reply"). Plaintiffs also

United States District Court
Northern District of California

14

1    allege that Mr. Heisner's purpose in "creat[ing]" PK Properties was to establish a shell company

2    that would facilitate continued bid-rigging "so that his wife and brother and his lifestyle could be

3    perpetuated during his pending incarceration . . . despite any restitution required by his [plea

4    agreement]." Opp'n at 12. Aside from the fact that "perpetuat[ion]" of "his wife and his brother"

5    makes no sense, this assertion has a more serious flaw: there is no allegation that Mr. Heisner

6    knew of his "pending incarceration" or "restitution required by his [plea agreement]" when PK

7    Properties was formed in 2008—the plea agreement was not entered into until March 2012.[9] Even

8    considering all of these thin allegations together, the Court finds that they are not sufficient to

9    "raise a right to relief above the speculative level."[10] *See Twombly*, 550 U.S. at 555.

10          Accordingly, the quiet title claim against PK Properties is DISMISSED without leave to

11   amend. As to Bank of America, Freddie Mac, and Trustee Corps, Plaintiffs have again failed to

12   allege—nor can they plausibly allege—that these Defendants assert claims to the Property. Thus,

13   the quiet title claims against them are also DISMISSED without leave to amend.

14          **E.      Fraud in the Concealment**

15          The elements of a properly pled fraud claim are: "(a) misrepresentation (false

16   representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

17   defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Philipson &*

18   *Simon v. Gulsvig*, 154 Cal. App. 4th 347, 363 (2007) (quoting *Agric. Ins. Co. v. Superior Court*,

19   70 Cal. App. 4th 385, 402 (1999); 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts § 676).

20   "To state a claim for fraud by concealment, a plaintiff must assert that the 'defendant [was] under

21   a duty to disclose the fact to the plaintiff.'" *Gayduchik v. Countrywide Home Loans, Inc.*, 2:09-

22   CV-03524 JAMGGH, 2010 WL 1737109, at *3 (E.D. Cal. Apr. 22, 2010) (quoting *Blickman*

23   *Turkus, LP v. MF Downtown Sunnyvale, L.L.C.*, 162 Cal. App. 4th 858, 868 (2008)). When

24

25   _____

26   [9] PK Properties alleges that Pennie Weber, not Mr. Heisner, established PK Properties. *See* PK Reply at 1 (citing Decl. of Pennie Weber in Supp. of Def. PK Properties' Mot. To Expunge Lis Pendens ¶¶ 3–5) (Dkt. No. 58).

27   [10] The Court also notes that Plaintiffs have also not sufficiently argued that a deed resulting from a trustee's sale subject to illegal bid-rigging is void, or that Plaintiffs even have standing to set aside the sale. *See* FAC ¶ 88. *Cf. In re*

28   *Butan Valley, N.V.*, BKR 07-36856, 2009 WL 5205343 (S.D. Tex. Dec. 23, 2009) (citing 11 U.S.C. § 363(n) for the proposition that, in the bankruptcy context, trustee's sales subject to bid-rigging may be "avoided" only by trustees).

United States District Court
Northern District of California

1    pleading fraud in federal courts, "a party must state with particularity the circumstances

2    constituting fraud or mistake." Fed. R. Civ. P. 9(b).

3         Plaintiffs allege fraud in the concealment against all Defendants.[11] Plaintiffs' theory of

4    fraud alleged in the FAC is basically identical to that alleged in the original complaint, *i.e.*, that

5    Defendants concealed the fact of the connection between Mr. Heisner's bid-rigging and the

6    trustee's sale of the Property, which induced Plaintiffs to enter into a stipulated judgment in a state

7    court proceeding and later vacate the property.[12] FAC ¶¶ 90–95. PK Properties argues that

8    Plaintiffs have failed to adequate allege a connection between Mr. Heisner's bid-rigging activities

9    and the trustee's sale of the Property. *See* PK Mot. at 8–9. The other Defendants argue that these

10   claims have not been adequately alleged against them. *See* BOA Mot. at 22–23; Trustee Reply at

11   8–9.

12        The Court agrees with Defendants. Plaintiffs' claim fails because they do not properly

13   allege the connection between the bid-rigging and the trustee's sale, as discussed above in the

14   context of the quiet title claim. Furthermore, as to PK Properties, Plaintiffs do not allege that PK

15   Properties had a duty to disclose the fact of Mr. Heisner's plea agreement at the time of the

16   stipulated judgment, nor do they plausibly allege that any concealment caused them to take any

17   particular actions. Thus, Plaintiffs fail to plead duty or actual reliance. As to Bank of America,

18   Freddie Mac, and Trustee Corps, Plaintiffs fail to plausibly allege that these Defendants had—or

19   should have had—knowledge of Mr. Heisner's activities. Thus, Plaintiffs fail to plead knowledge

20   of falsity.

21        Accordingly, the fraud in the concealment claim against all Defendants is DISMISSED

22   without leave to amend.

23   ///

24

25

26   [11] Although the heading for the quiet title claim indicates that it is brought against only PK Properties and Does 1–100, Plaintiffs allege in the text of the FAC that "Defendants, and each of them" are liable for this cause of action.

27   [12] The allegation that Plaintiffs were induced to "vacate the Property" is new to the FAC. However, this allegation is "devoid of further factual enhancement," and it does not change the Court's analysis that Plaintiffs have failed to

28   allege actual reliance, as well as other essential elements of the claim. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### F.      California Unfair Competition Law

The California Unfair Competition Law ("UCL") prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, *i.e.*, *caused by*, the unfair business practice . . . ." *Lawther v. OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at \*23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011)) (emphasis in original).

Plaintiffs allege that all Defendants violated the UCL. As Defendants correctly point out, Plaintiffs' UCL claim is identical to that of its UCL claim in the original complaint, and it fails for the same reason: Plaintiffs' have failed to allege economic injury caused by any of the Defendants. *See Bergman*, 2013 WL 5863057, at \*33. Accordingly, the UCL claim against all Defendants is DISMISSED without leave to amend.

## VI.      CONCLUSION

Plaintiffs' FAC largely restates the original complaint. Plaintiffs' allegations, which do not present any substantive new facts or argument, are insufficient to meet their burden at the Rule 12(b)(6) stage. Plaintiffs have been given an opportunity to amend their complaint to state a viable claim but they have failed to do so, demonstrating that amendment would be futile. Accordingly, the Court GRANTS Defendants' Motions and DISMISSES the FAC without leave to amend.

**IT IS SO ORDERED**.

Dated: January 22, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge